# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

INFORM INC.,

       Plaintiff,

v.

GOOGLE LLC; GOOGLE INC.;
ALPHABET INC.; YOUTUBE, LLC;
YOUTUBE, INC.; and JOHN DOES
1-100,

       Defendants.

Civil Action No. 1:19-cv-05362-JPB

# DEFENDANTS' REPLY MEMORANDUM IN
# SUPPORT OF MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.   LEGAL STANDARD ...................................................................................1

II.  PLAINTIFF DOES NOT HAVE STANDING TO BRING SUIT .....................2

   A.  Plaintiff Has Not Established Article III or Antitrust Standing in Any Non-Online Advertising Market.................................................................................3

   B.  Plaintiff Does Not Have Antitrust Standing to Pursue Claims Regarding the Alleged Online Advertising Market .......................................................................5

III. PLAINTIFF HAS NOT PLED A SECTION I VIOLATION (COUNT I) ..........8

   A.  Plaintiff Has Not Pled a *Per Se* Tying Claim...................................................8

   B.  Plaintiff Has Not Pled a Conspiracy Involving Former Employees ..............10

IV. PLAINTIFF HAS NOT PLED A SECTION 2 CLAIM FOR MONOPOLY MAINTENANCE OR ATTEMPTED MONOPOLIZATION (COUNTS II & IV) ......................................................11

   A.  Plaintiff's Online Advertising Monopolization Claim Fails ..........................11

   B.  Plaintiff's Other Monopoly Maintenance Claims Fail ...................................13

   C.  Plaintiff's Attempted Monopolization Claims Fail ........................................15

V.  PLAINTIFF CANNOT ALLEGE A MONOPOLY LEVERAGING CLAIM (COUNT III) ...........................................................................16

VI. PLAINTIFF HAS NOT PLED EXCLUSIVE DEALING (COUNT V) ..........17

VII. PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE (COUNT VI).....................................................................19

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258 (11th Cir. 1998) ................................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................2, 11

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126 (E.D.N.Y. 2010) ..............10

*Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040 (D. Colo. 2017) ...............18

*Cuno Inc. v. Pall Corp.*, 729 F. Supp. 234 (E.D.N.Y. 1989)...................14

*Duty Free Am., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015) ............7

*Eastman v. Quest Diag. Inc.*, 724 F. App'x 556 (9th Cir. 2018)............................18

*Gulf States Reorg. Grp. Inc. v. Nucor Corp.*, 466 F.3d 961 (11th Cir. 2006) ...........7

*In re Alum. Warehous. Antitrust Litig.*, 833 F.3d 151 (2d Cir. 2016) ......................4

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57 (2d Cir. 2019) ..............6

*It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016)......................9

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ......................14

*Kirkland v. Tamplin*, 645 S.E.2d 653 (Ga. Ct. App. 2007) .....................20

*Palmyra Park Hosp. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291 (11th Cir. 2010) ................................................................................6

*Quality Auto Painting Ctr. v. State Farm Indem. Co.*, 917 F.3d 1249 (11th Cir. 2019) (en banc) .........................................................................11

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997)........14

*Rider Clothing LLC v. BoardRiders, Inc.*, 2019 WL 8163813 (C.D. Cal. Nov. 26, 2019) .................................................................18

*Riley v. Hannibal*, 2017 WL 5235673 (N.D. Ga. June 29, 2017) ..........................20

*Robles v. Humana Hosp.*, 785 F. Supp. 989 (N.D. Ga. 1992)...................................6

*RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 2019 WL 7584729 (M.D. Fla. Dec. 4, 2019)..............................................................16

*Schor v. Abbott Labs,* 457 F.3d 608 (7th Cir. 2006).................................................17

*Scientific Games Int'l, Inc. v. Alchemy3, LLC*, 2012 WL13009221 (N.D. Ga. Sept. 25, 2012) ........................................................20

*SHM Int'l Corp. v. Guangdong Chant Gr., Inc.*, 2016 WL 4204553 (N.D. Ga. June 29, 2016) .................................................20

*Spanish Broad. Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065 (11th Cir. 2004) .................................................................11

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991).......................6

*U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986 (11th Cir. 1993) ...............................12

## STATUTES

15 U.S.C. § 15b....................................................................15

**INTRODUCTION**

Plaintiff's Opposition, like its Complaint, is long on rhetoric and short on

facts.  It does not rebut Defendants' showing that Plaintiff lacks standing, or

adequately address its failure to state any cognizable claim.  Perhaps most

tellingly, it makes no effort to respond to Defendants' argument that the *only*

conduct that Plaintiff alleges caused it a concrete injury (i.e., the Flash/HTML5

transition) does not constitute exclusionary conduct under the antitrust laws.  The

Opposition instead adds to the confusion created by Plaintiff's shotgun pleading by

referencing markets and claims not identified in the Complaint and relying on

vague and conclusory allegations instead of facts.  The Complaint should be

dismissed due to Plaintiff's (1) lack of standing and/or (2) failure to state a claim.[1]

**ARGUMENT**

**I.     LEGAL STANDARD**

Plaintiff attempts to disguise its pleading failures by alluding to "Google's

dominance" which it claims raises "fact-intensive issues," Opp. at 5, while

ignoring entirely this Court's admonitions against shotgun pleadings like the

---

[1] The brief addresses the claims against Google LLC ("Google") because Plaintiff does not contest that all claims against the remaining Defendants should be dismissed, Defs.' Br. at 2 n.1, ECF 16-1, asserting only (and without explanation) that its allegations apply to all Defendants, Opp. at 1 n.1, ECF 22.  To the extent they do, they also fail for the reasons described herein.

Complaint here, Defs.' Br. at 3.  Plaintiff's apparent argument—that all antitrust cases must proceed to discovery, regardless of the vague and conclusory nature of the pleadings—has been directly rejected by the Supreme Court.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (articulating fact-based pleading standards that are especially important given enormous cost of antitrust discovery); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting *Twombly*'s principle that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").[2]  Plaintiff's failure to adequately plead necessary *facts* compels dismissal of its Complaint.

## II.    PLAINTIFF DOES NOT HAVE STANDING TO BRING SUIT

Plaintiff's Opposition confirms that it has not pled any injury traceable to the alleged Internet Search, Licensable Mobile Device Operating Systems, Search Advertising, Ad Server, and Web Browser markets (collectively, "non-Online Advertising markets").  Plaintiff therefore lacks both Article III standing and antitrust standing to challenge conduct in those markets.

With respect to the alleged Online Advertising market (and the Online Video

---

[2] Plaintiff's suggestion that "Google invites legal error" by citing post-discovery cases, Opp. at 6, should not be credited.  Defendants also cite myriad pre-discovery cases, and Plaintiff does not dispute Defendants' articulation of the legal standards.

2

Advertising submarket, which is not identified as a "Relevant Market" in the Complaint), Plaintiff fails to show that it has antitrust standing—the higher standard required of antitrust plaintiffs seeking to recover treble damages.

## A. Plaintiff Has Not Established Article III or Antitrust Standing in Any Non-Online Advertising Market

The only harm alleged by Plaintiff pertains to conduct in the alleged Online Advertising market. *See* Section II.B. Nowhere else does Plaintiff allege that Google caused it a specific injury. Plaintiff instead asserts in conclusory fashion that it "participates" in each non-Online Advertising market, "competes" in the Search Advertising market, and is a "customer" in the Ad Server market. Opp. at 6.

Plaintiff provides no factual support for these assertions, such as services it offers (or was prevented from offering) to compete in the Search Advertising market or purchases it made as an alleged consumer in the Ad Server market. More fundamentally, however, Plaintiff provides no authority that mere participation in a market, whether as a customer or competitor—*without any corresponding injury*—is sufficient to establish Article III standing. It is not, as confirmed by every standing case cited by both parties. *See* Opp. at 7 & n.9;

Defs.' Br. at 4-5.[3]

Plaintiff's attempt to now invoke the "comprehensive" nature of the antitrust laws also is unpersuasive.  Opp. at 7-8.  The very cases Plaintiff cites make clear that it is *not enough* to be a consumer or a competitor—one must also plead an actual injury to establish Article III standing (and more to establish the more-rigorous antitrust standing).  *See id.* (*citing Blue Shield v. McCready*, 457 U.S. 465, 470, 475-80 (1982) (plaintiff "clearly had suffered an injury" and issue was the remoteness of injury); *Feldman v. Am. Dawn, Inc*., 849 F.3d 1333, 1342 (11th Cir. 2017) (plaintiff lacked antitrust standing *even though* he suffered an injury and was a market participant)).  Injury in the non-Online Advertising markets is exactly what Plaintiff fails to allege here.  And Plaintiff has not pled facts establishing that its alleged injury in the Online Advertising market is "inextricably intertwined" with any conduct in the other alleged markets.  *In re Alum. Warehous. Antitrust Litig*., 833 F.3d 151, 161-63 (2d Cir. 2016).

At most, Plaintiff claims it pled antitrust injury through generalized allegations that Google excluded it from the purported non-Online Advertising markets.  Opp. at 9-10.  But the Complaint is devoid of any *facts* regarding such

---

[3] Plaintiff's sole citation for this point, Opp. at 7 (citing *Covad Commc'n v. BellSouth*, 374 F.3d 1044 (11th Cir. 2004)), says nothing about standing at all.

4

claimed exclusions (including how Plaintiff was excluded from markets in which it never alleged that it competes).  The Complaint's boilerplate conclusions are insufficient to establish standing in these markets.  *See* Opp. at 10; Defs.' Br at 2-3.

### B.   Plaintiff Does Not Have Antitrust Standing to Pursue Claims Regarding the Alleged Online Advertising Market

The only specific harm Plaintiff alleges is to its video advertising business, Opp. at 9, due to what it now characterizes as "the demise of Adobe Flash," *id*. at 32.[4]  Assuming such an allegation satisfies Article III's injury-in-fact requirement, it does not satisfy the higher burden of antitrust standing for two reasons.

*First*, Plaintiff is not an efficient enforcer of its purported online advertising claim because its alleged injury is at best indirect.  Defs.' Br. at 11-12.  Plaintiff never contests that its lost profits claim is derivative of whatever harm may have been suffered by Adobe and "downstream digital publishers," and that there are therefore better plaintiffs to bring suit if Google's actions were anticompetitive. *Id*. at 11.  Merely being an alleged competitor *is not enough* when there are more directly injured parties because the efficient enforcer prong of the antitrust standing

---

[4] To the extent Plaintiff now argues that this injury also was felt in an alleged Online Video Advertising submarket, that market was not alleged as an antitrust relevant market in the Complaint.  Compl. ¶¶ 86-87.  Even if it were, the same arguments in Section II.B would defeat any claim as to this supposed submarket.

analysis "is best understood . . . as a search for the proper plaintiff." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (11th Cir. 1991); *see also IQ Dental Supply, Inc. v. Henry Schein, Inc*., 924 F.3d 57, 67 (2d Cir. 2019) ("[T]he efficient-enforcer factors are concerned with finding the plaintiffs best suited . . . and not with identifying every plaintiff who might sue."). The uncontested existence of other "more easily imagined efficient enforcers" thus undercuts Plaintiff's antitrust standing claim. *Robles v. Humana Hosp.*, 785 F. Supp. 989, 999 (N.D. Ga. 1992).[5]

Plaintiff's conclusory assertions that its injury is not speculative or remote, that its damages are directly caused by Google's conduct, and that there are no apportionment issues do not change the efficient enforcer analysis. Opp. at 12. Plaintiff does not explain how Google's conduct (rather than the industry-wide transition away from Flash) was a direct cause of its alleged injury, how it would measure the damage allegedly suffered, or how it would allocate damages between itself and the more directly-injured parties. *See* Defs.' Br. at 11-13.[6]

---

[5] *Palmyra* is not to the contrary. The *Palmyra* Court concluded that plaintiff was "better suited than . . . other parties" to bring suit because, in part, it was Phoebe's "chief competitor," a claim Plaintiff cannot make here. *Palmyra Park Hosp. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1305 (11th Cir. 2010).

[6] Plaintiff also does not become an efficient enforcer simply because it is seeking injunctive relief, especially where, as here, the injunctive relief sought has very

*Second*, Plaintiff's alleged lost profits do not qualify as an antitrust injury because they were not caused by anticompetitive conduct.  *See* Defs.' Br. at 8-10. Indeed, the Opposition is noticeably silent on how Google took any anticompetitive action during the industry-wide HTML5 transition, arguing that this is "a factual question to be developed in discovery."  Opp. at 9 n.12.[7]  At the pleading stage, however, the Court must evaluate the Complaint's *plausible* inferences.  The only plausible inference is that Adobe's Flash technology was eclipsed by the open-standards HTML5 technology when every major browser voiced concerns with Flash and decided to gradually move to HTML5.  Defs.' Br. at 9.  Moreover, there is *no allegation* that Google prevented Plaintiff from creating advertisements compatible with Chrome (or any other browser), or required the use of Google products to create HTML5 video ads.[8]  *Id.* at 10.

---

little connection to the injury alleged.  *See Duty Free Am., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1273 (11th Cir. 2015).

[7] Plaintiff also asserts that Google need only be a material cause of its injury.  Opp. at 9 n.12 (quoting *Gulf States Reorg. Grp. Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006)).  That argument, however, goes only to the Article III injury-in-fact analysis; it has no bearing on whether the injury qualifies as an antitrust injury.  *Gulf States*, 466 F.3d at 965-66.

[8] Recognizing this flaw, Plaintiff claims—without citation—that Google *required* the use of Google products to make Chrome-compatible advertisements.  Opp. at

## III.   PLAINTIFF HAS NOT PLED A SECTION I VIOLATION (COUNT I)

Count I does not identify any agreement in restraint of trade between any Defendant and a non-party, instead implausibly alleging that "Defendants are combinations within the meaning of Section 1 of the Sherman Act." Compl. ¶ 198. In its Opposition, Plaintiff now identifies two purported bases for its Section 1 claim: (1) a *per se* tying claim involving the alleged rebranding of two advertising services, Opp. at 13-15, and (2) unspecified alleged "concerted action" between Google and certain former employees, *id*. at 15-17. Neither has merit.

### A.   Plaintiff Has Not Pled a *Per Se* Tying Claim

Plaintiff claims that Google has tied the use of its DoubleClick for Publishers ("DFP") ad server (software that selects and serves advertisements that display on a website), with its AdX ad exchange (software that runs a real-time advertising marketplace where advertisers can bid on places to run online advertisements). Opp. at 13-15. The purported factual basis for Plaintiff's tying allegation is found in a single paragraph in the Complaint: "In June 2018, Google underwent a major rebranding of its ad platform. Google has now tied its DFP Ad Server with AdX under a single tool, Google Ad Manager . . ." Compl. ¶ 65. This

---

9 n.11. The Complaint, in contrast, admits that HTML5 is not a Google product; it is an open-standards technology available to all. *See* Compl. ¶ 129.

conclusory reference to a "rebranding" of two products under a single name does not state a *per se* claim of illegal tying.

*First*, Plaintiff falls far short of alleging facts showing that two separate products have been "tied." Tying can have an anticompetitive effect only where competitors are substantially excluded from the market because customers who must purchase the tying product (because a defendant has market power in that product) have no choice but to also purchase the tied product. *It's My Party, Inc. v. Live Nation, Inc*., 811 F.3d 676, 684-85 (4th Cir. 2016). Plaintiff has failed to plead any such exclusion, and its allegation that Google rebranded two products under a single name does not support such an inference. That is, rebranding does not mean (and Plaintiff does not allege) that Google's DFP ad server excludes non-Google ad exchanges by refusing to serve their ads.

*Second*, Plaintiff has not adequately pled that Google has monopoly power in the alleged Ad Server market or that Google can use that alleged power to coerce use of its AdX ad exchange. Opp. at 14. As to monopoly power, aside from a conclusory assertion of DFP's alleged market share, Compl. ¶ 86(d), Plaintiff provides no factual description of the Ad Server market, whether or not alternative technologies are available to publishers and advertisers to serve ads, or whether and how Google has the ability to raise prices or exclude competitors from

9

the market—the hallmarks of monopoly power.  Defs.' Br. at 22-23.

As to alleged coercion, Plaintiff has not pled that advertisers using competing ad exchanges cannot have their ads served on a website that uses DFP (thereby forcing the use of AdX).[9]  Thus, Plaintiff has failed to allege any unlawful tying because it does not (and cannot) allege that it or any advertiser has been coerced into using AdX due to DFP's alleged market prevalence.  *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1263 (11th Cir. 1998).[10]

### B.    Plaintiff Has Not Pled a Conspiracy Involving Former Employees

The Complaint fails entirely to allege an agreement between Google and its former employees—the most basic Sherman Act requirement—alleging only that former employees took unspecified actions that allegedly benefited Google after

---

[9] Similarly, beyond threadbare allegations that a tie exists, Plaintiff does not allege how it (to the extent it claims it is an ad exchange consumer) was forced to use AdX.  Plaintiff's claim that it was forced to use *DFP* (the allegedly dominant product), Compl. ¶ 114, is nonsensical since tying requires forced use of the *non-dominant* product (i.e., *AdX*).

[10] *See also Joseph v. Amazon.com*, Inc., 46 F. Supp. 3d 1095, 1103-04 (W.D. Wash. 2014) (plaintiff failed to allege or present evidence that he was forced to buy the tied product); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 144 (E.D.N.Y. 2010) (plaintiff failed to allege that any consumer purchased "a product that he or she did not want").

they took government positions.[11]  No facts are pled regarding any agreement with Google that they do so, and certainly no agreement that falls within the Sherman Act's purview.  *See Spanish Broad. Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065, 1071 (11th Cir. 2004).  Without any such facts, Plaintiff's Section 1 claim fails.  *See Twombly*, 550 U.S. at 553-555; *Quality Auto Painting Ctr. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260-62 (11th Cir. 2019) (en banc).[12]

## IV.   PLAINTIFF HAS NOT PLED A SECTION 2 CLAIM FOR MONOPOLY MAINTENANCE OR ATTEMPTED MONOPOLIZATION (COUNTS II & IV)

### A.   Plaintiff's Online Advertising Monopolization Claim Fails

Plaintiff's Opposition fails to address the myriad deficiencies in its claim

---

[11] Plaintiff fails to reference any specific action by these former officials that allegedly restrained trade in a relevant market, let alone harmed Plaintiff in any way.  For example, vague allegations about the weakening of patents *that do not belong to Plaintiff* have no relevance here.  Further, allegations that former FTC Commissioner Joshua Wright impacted the outcome of an FTC investigation that was closed *before* he was sworn in are equally disconnected from reality.  *See* Press Release, FTC (Jan. 11, 2013) https://www.ftc.gov/news-events/ press-releases/2013/01/joshua-d-wright-begins-term-federal-trade-commission.

[12] Plaintiff's passing reference to alleged concerted action with Microsoft, Opp. at 16, must also be rejected.  Plaintiff has alleged no facts from which an agreement with Microsoft, a competitor of Google, may be inferred; nor has Plaintiff alleged how any such agreement would have harmed competition or Plaintiff.  Plaintiff also argues that it plausibly alleges an unreasonable restraint of trade in each of the "Leveraged Markets," *id*. at 17, but nowhere identifies any agreement that could have restrained trade in those markets.

that Google monopolized an alleged Online Advertising market.  To start, Plaintiff

has not pled facts to establish that Google has monopoly power, alleging only that

Google has a 40% market share.  The law in this Circuit is clear that such a market

share is insufficient as a matter of law, and Plaintiff cites nothing to the contrary.

*See* Defs.' Br. at 18; *U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986, 1000 (11th Cir.

1993) (noting that no case has found monopoly power with less than a 50% market

share);[13] *see also* Opp. at 23 n.26 (acknowledging authority requiring "dominant"

share (i.e., at least between "50% and 70%") to establish market power).[14]

Moreover, although Plaintiff recognizes that it must plead facts to support

the existence of a distinct economic market, Opp. at 20, it has not done so.  At

most, it describes certain products, but nowhere explains why Online Advertising

is a distinct economic market that excludes the host of other avenues through

which companies advertise their products (*e.g.*, television, newspapers, billboards).

In fact, the Complaint expressly notes how online advertising is just like

---

[13] Plaintiff's attack on the facts of *U.S. Anchor Manufacturing*, Opp. at 24 n.27,
does not address (or refute) this portion of the opinion, which summarized the state
of the law regarding claims involving less than 50% market share.

[14] Plaintiff somehow suggests that Google now has a 49% share in the alleged
Online Advertising market, citing Google's 2019 10-K.  Opp. at 2 n.4, 25 n. 28.  It
is telling that Plaintiff does not cite a page in the 10-K—nowhere in that filing is
there reference to any Online Advertising market share.

advertising through "other advertising medium[s]." Compl. ¶ 19.

Plaintiff's Opposition also does not address Defendants' argument that the industry-wide transition from Flash to HTML5 does not constitute exclusionary conduct. This is rather striking, given that this is the only alleged conduct from which Plaintiff's claimed injury arises. As noted, Plaintiff does not allege that the move from Flash to HTML5 excluded Plaintiff or any other advertising competitor from the market because, as Plaintiff concedes, "HTML5 is open source," Compl. ¶ 129, meaning that nothing precluded Plaintiff or its customers from employing this freely licensable format. Section II.B; *see also* Defs.' Br. at 19-20.

### B. Plaintiff's Other Monopoly Maintenance Claims Fail

Plaintiff's Opposition does not even attempt to clarify the shotgun style that perpetuates its claims of monopolization in the alleged non-Online Advertising markets (where Plaintiff has neither Article III nor antitrust standing). *First*, the Complaint does not plead facts necessary to support these markets as distinct relevant antitrust markets.[15] Indeed, Plaintiff's Opposition does not contest that it has failed to plead facts regarding substitutability with other products, how the

---

[15] The Complaint's failure to do so belies the assertion that Google "does not dispute" it has monopoly power, Opp. at 2 n.3, since adequately defining the market is a necessary precursor to alleging monopoly power.

13

product is economically distinct from other technologies, or viewed by customers or competitors as separate markets.  Defs.' Br. at 22-23; *Jacobs v. Tempur-Pedic Int'l, Inc*., 626 F.3d 1327, 1336-38 (11th Cir. 2010).  Instead, Plaintiff claims (without authority) that identifying a product's uses and characteristics is sufficient.  Opp. at 21.  Just as describing a Domino's pizza does not make it a relevant product market, *Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430, 436-38 (3d Cir. 1997), merely describing a Google product and an alleged market share is insufficient as a matter of law, Defs.' Br. at 22-23.[16]

*Second*, the Opposition does nothing to substantiate how any alleged unlawful conduct is exclusionary, much less how it harmed competition.  When confronted with this argument, Plaintiff simply repeats its laundry list of inadequate conclusory allegations.  Opp. at 27-28.  But, as Defendants already explained, bullet point descriptions of vague conduct, bereft of any allegations as to how the conduct excluded competitors or otherwise harmed competition, do not state a Section 2 claim.  Defs.' Br. at 23-25.

---

[16] Plaintiff's footnoted effort to cure its pleading failures as to the alleged Search Advertising market falls flat.  Opp. at 21 n.24.  Estoppel cannot be based on non-U.S. government authorities applying non-U.S. law, *Cuno Inc. v. Pall Corp*., 729 F. Supp. 234, 238 (E.D.N.Y. 1989), and Plaintiff can cite to no U.S. court making such a finding.

Plaintiff's attempt to claim that certain Google acquisitions resulted in its unlawfully *acquiring* monopoly power in unspecified markets is similarly flawed, especially given that they occurred many years ago, were not challenged by federal regulators (often after exhaustive investigations), and are well outside the four-year statute of limitations applicable to federal antitrust claims.  15 U.S.C. § 15b.  The Complaint does not plead facts explaining how any transaction resulted in Google's unlawful acquisition of monopoly power in any market, nor how such acquisition harmed Plaintiff at all; it merely pairs descriptions of the transactions with vague and conclusory accusations.  *See* Compl. ¶¶ 76-84.

### C.     Plaintiff's Attempted Monopolization Claims Fail

Plaintiff's claim for attempted monopolization of the alleged Web Browser and Online Advertising markets fails for the same reasons as its monopoly maintenance claim, as it has not alleged facts (1) to support these as relevant antitrust markets; or (2) to constitute predatory or anticompetitive conduct in these markets.  *See* Sections IV.A-B.

Plaintiff also has not pled facts to support a dangerous probability of achieving monopoly power in the Online Advertising market because Plaintiff has

15

not alleged that Google possesses at least a 50% market share.  Defs.' Br. at 26.[17]

Plaintiff instead claims that certain "factors . . . amplify Google's probability of

achieving monopoly power," Opp. 25 & n.29, but cites to nothing other than vague

and conclusory paragraphs of the Complaint, none of which support the existence

of any of its listed factors.[18]

## V.   PLAINTIFF CANNOT ALLEGE A MONOPOLY LEVERAGING CLAIM (COUNT III)

Plaintiff does not cite a single case recognizing "monopoly leveraging" as a

standalone Section 2 claim.  Opp. at 29-31.  Indeed, Plaintiff concedes that a

leveraging claim cannot survive unless there is a dangerous probability that the

defendant will succeed in monopolizing the leveraged market, and that monopoly

leveraging "presupposes anticompetitive conduct."  Opp. at 30 (quoting *Verizon*

*Commc'ns v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 415, n.4 (2004)).

---

[17] Plaintiff cites *RxStrategies, Inc. v. CVS Pharmacy, Inc*., 2019 WL 7584729 (M.D. Fla. Dec. 4, 2019), Opp. at 24, which was not an attempted monopolization case, and therefore did not consider (let alone reject) this Circuit's precedent that at least a 50% share is required.

[18] For example, Plaintiff identifies "the strength and capacity of competitors" as a factor, Opp. at 23, but nowhere addresses Defendants' argument that Google could not plausibly monopolize this market in light of Facebook's significant alleged presence, Defs.' Br. at 26-27.

Instead, Plaintiff argues that the anticompetitive conduct alleged in the Complaint somehow saves its standalone leveraging claim.  Opp. at 29.  While Plaintiff can try to use leveraging as an overarching theory to bolster its monopoly maintenance (Count II) and attempted monopoly (Count IV) claims, there is no authority to support Plaintiff's *freestanding* monopoly leveraging claim (Count III).  *Schor v. Abbott Labs,* 457 F.3d 608, 611 (7th Cir. 2006) (rejecting "free-standing theory of 'monopoly leveraging.'").

## VI.   PLAINTIFF HAS NOT PLED EXCLUSIVE DEALING (COUNT V)

Plaintiff's exclusive dealing claim encapsulates the problems with its shotgun pleading.  In its Opposition, Plaintiff attempts to resuscitate that claim by citing a veritable hodge-podge of vague and conclusory allegations, failing entirely to tie them into a coherent theory of actual exclusive dealing.  Opp. at 31-32.

Plaintiff has not pled a single instance where it has not been able to compete because Google allegedly has an agreement with a customer that requires the customer to deal exclusively with Google.  Alleging that two products are sold together does not amount to exclusive dealing where the purchaser is not foreclosed from purchasing other competing products.[19]  As such, none of the

---

[19] For example, a customer with an Android device can download and use other search or browser apps, and a publisher using Google's DFP ad server may use non-Google advertising exchanges—there is no exclusive agreement blocking a

conclusory allegations supports any exclusive dealing claim. Indeed, many of the cited allegations are not even about exclusive arrangements at all. *See, e.g. id.* at 31 n.33, 33 n.37 (referring to Flash/HTML5, DFP/AdX, and minimum bid allegations, none of which mention any exclusive dealing arrangement).

Plaintiff's Opposition also fails to identify allegations of substantial foreclosure in any alleged relevant market. Plaintiff asserts that it "directly alleges substantial foreclosure of the relevant markets due to Google's exclusive dealings," Opp. at 33 & n.37, but the Complaint does no such thing. Not one of the Complaint paragraphs to which Plaintiff points, *id.*, alleges facts from which one could identify the degree of alleged foreclosure, let alone that it was substantial. That failure is fatal. Defs.' Br. at 30-32.[20]

---

competitor from offering its product to any customer. Similarly, Plaintiff has not identified a single example of an agreement between Google and a website owner that prevents advertisements from networks that compete with Google from running on that website.

[20] *See also Eastman v. Quest Diag. Inc.*, 724 F. App'x 556, 558-59 (9th Cir. 2018) (affirming grant of motion to dismiss where plaintiff failed to allege *facts* regarding alleged foreclosure); *Rider Clothing LLC v. BoardRiders, Inc.*, 2019 WL 8163813, at *4 (C.D. Cal. Nov. 26, 2019) (granting motion to dismiss where complaint "alleges nothing related to the number or character of Defendants' [allegedly exclusive] promotional contracts or the share of the market they occupy"); *Crocs, Inc. v. Effervescent, Inc*, 248 F. Supp. 3d 1040, 1058-59 & n.13-14 (D. Colo. 2017) (footnote omitted) (granting motion to dismiss due to "absence

The two categories of exclusive agreements alluded to in Count V—alleged agreements with OEMs to pre-install Google applications on Android mobile devices and with publishers who use AdSense, Compl. ¶ 222—are not supported by factual allegations necessary to state a claim.  In addition to failing to adequately plead that the unspecified agreements were exclusive, Plaintiff unquestionably has not pled that these agreements substantially foreclose competition.  Defendants previously described that pleading failure regarding OEMs.  Defs.' Br. at 30-31.  And the problem is even more egregious with respect to AdSense because the Complaint paragraphs to which Plaintiff cites, Opp. at 31-32 & n.33, do not even identify the relevant market allegedly impacted, let alone that foreclosure in any such market is substantial.

## VII.  PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE (COUNT VI)

Plaintiff's Opposition repeats the conclusory allegations regarding tortious interference that it asserted without factual support in the Complaint.  That is not enough.  Defs.' Br. at 32-35.  The Complaint merely alleges that Google *attempted* "to convince Inform's customer that Google offered superior services," Compl.

---

of factual allegations related to the nature of Crocs' alleged exclusive arrangements or allegations related to how those agreements significantly impair competition").

¶ 134, not that Google succeeded.  Moreover, Plaintiff still has not explained how Google engaged in any wrongful conduct.  Simply approaching customers "with the intent to divert those customers from Plaintiff to Defendants," *id*. ¶ 230, is lawful competition, not tortious interference.  *See, e.g.*, *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007).  Finally, contrary to Plaintiff's assertion that this claim is more suited for resolution at summary judgment, courts frequently resolve such claims at the motion to dismiss stage, particularly where, as here, Plaintiff has not alleged an actual loss of business (i.e., that a customer "discontinue[d] or fail[ed] to enter into a business relationship" with Plaintiff due to the alleged interference). *SHM Int'l Corp. v. Guangdong Chant Gr., Inc.*, 2016 WL 4204553, at *6 (N.D. Ga. June 29, 2016); *see also Scientific Games Int'l, Inc. v. Alchemy3, LLC*, 2012 WL13009221, at *2-3 (N.D. Ga. Sept. 25, 2012); *Riley v. Hannibal*, 2017 WL 5235673, at *6 (N.D. Ga. June 29, 2017).

## CONCLUSION

Plaintiff's Complaint should be dismissed in its entirety on standing grounds.  In the alternative, Counts I-V should be dismissed for failing to state a claim under the federal antitrust laws and Count VI should be dismissed for failing to state a claim for tortious interference.

April 6, 2020                              */s/ Eric P. Schroeder*

                                          BRYAN CAVE LEIGHTON PAISNER
                                          LLP
                                          Eric P. Schroeder (Ga. Bar 629880)
                                          Brian M. Underwood, Jr. (Ga. Bar
                                          804091)
                                          One Atlantic Center, 14th Floor
                                          1201 West Peachtree Street, N.W.
                                          Atlanta, Georgia 30309
                                          Telephone:   404-572-6600
                                          Facsimile:   404-572-6999
                                          eric.schroeder@bclplaw.com
                                          brian.underwood@bclplaw.com

                                          WILLIAMS & CONNOLLY LLP
                                          John E. Schmidtlein*
                                          Carol J. Pruski*
                                          Kimberly Broecker*
                                          *Pro hac vice
                                          725 Twelfth Street, N.W.
                                          Washington, D.C. 20005
                                          Tel: (202) 434-5000
                                          Fax: (202) 434-5029
                                          jschmidtlein@wc.com
                                          cpruski@wc.com
                                          kbroecker@wc.com

                                          *Counsel for Defendants Google LLC
                                          (formerly Google Inc.), Alphabet Inc.,
                                          and YouTube, LLC (formerly YouTube,
                                          Inc.)*

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 6th day of April, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send email notification of such filing to all counsel of record.

This 6th day of April, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880