# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

INFORM INC.,

      Plaintiff,

v.

GOOGLE LLC; ALPHABET INC.;
YOUTUBE, LLC; and JOHN DOES 1-
100,

      Defendants.

Civil Action No. 1:19-cv-05362-JPB

## DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

I.  LEGAL STANDARD ON A MOTION TO DISMISS ....................................2

II.  PLAINTIFF FAILS TO CURE ITS SHOTGUN PLEADING. .........................2

III.  PLAINTIFF LACKS STANDING TO SUE. ..................................................6

   A.  Plaintiff Must Establish Article III and Antitrust Standing. ............................7

   B.  Plaintiff Does Not Plead Facts To Establish Article III or Antitrust Standing in the Non-Online Advertising Markets. ...............................................................8

   C.  Plaintiff Lacks Antitrust Standing To Pursue Harm in the Alleged Online Advertising and Online Video Advertising Markets. ...........................................10

      1.  Plaintiff Has Not Suffered Antitrust Injury. ...............................................10

      2.  Inform Is Not a Proper Plaintiff. .................................................................13

IV.  PLAINTIFF FAILS TO PLEAD A SECTION 1 CLAIM (COUNT I). ...........14

   A.  Plaintiff Does Not Plead an Actionable Agreement. ......................................15

   B.  Plaintiff Does Not Adequately Allege Any Unreasonable Restraint of Trade in a Properly Defined Antitrust Relevant Market. ...............................................15

      1.  Plaintiff Fails To Allege Any Relevant Market. .........................................16

      2.  Plaintiff Fails To Allege Harm Within a Relevant Market. ........................19

   C.  Plaintiff Fails To Plead a *Per Se* Tying Claim. ..............................................19

V.  PLAINTIFF FAILS TO PLEAD A SECTION 2 CLAIM FOR MONOPOLY MAINTENANCE (COUNT II). ...............................................................................22

   A.  Plaintiff Fails To Plead Monopoly Maintenance as to the Alleged Online Advertising and Online Video Advertising Markets. ...........................................24

1.   Plaintiff Does Not Plead That Any Defendant Has Monopoly Power in the Alleged Online Advertising or Online Video Advertising Markets. ................24

2.   Plaintiff Does Not Plead Anticompetitive Conduct. ...................................25

B.   Plaintiff Fails To State a Claim for Monopoly Maintenance as to the Alleged Markets in Which It Does Not Compete. .............................................................28

VI.   PLAINTIFF DOES NOT PLEAD A SECTION 2 CLAIM FOR ATTEMPTED MONOPOLIZATION (COUNT IV). .......................................................................32

VII.   PLAINTIFF CANNOT ALLEGE A MONOPOLY LEVERAGING CLAIM (COUNT III). ..........................................................................................................34

VIII.   PLAINTIFF HAS NOT PLED A CLAIM FOR EXCLUSIVE DEALING UNDER SHERMAN ACT SECTION 2 OR CLAYTON ACT SECTION 3 (COUNTS V, VI). ......................................................................................................35

A.   Plaintiff Does Not Adequately Allege Any "Exclusive" Agreement. ...........36

B.   Plaintiff Does Not Adequately Allege That Any "Exclusive Agreement" Substantially Foreclosed Competition. ................................................................38

IX.   PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE. ...................................................................................................38

# TABLE OF AUTHORITIES

## STATE CASES

*Disaster Servs. v. ERC P'ship*, 492 S.E.2d 526 (Ga. Ct. App. 1997)......................40

*Kirkland v. Tamplin*, 645 S.E.2d 653 (Ga. Ct. App. 2007) ....................................40

*Sommers Co. v. Moore*, 621 S.E.2d 789 (Ga. Ct. App. 2005)................................40

*Tribeca Homes, LLC v. Marathon Inv. Corp.*, 745 S.E.2d 806 (Ga. Ct. App. 2013) ...................................................................................................................39

## FEDERAL CASES

*Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330 (11th Cir. 2019) ....6, 7, 9

*Allied Orthopedic Appliances v. Tyco Health Care Grp.*, 592 F.3d 991 (9th Cir. 2010) ..........................................................................................................27

*Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir. 1985) ............20

*Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258 (11th Cir. 1998) ...................................................................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................2

*Assoc'd Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) .................................................................................................................13, 14

*Austin v. Blue Cross & Blue Shield*, 903 F.2d 1385 (11th Cir. 1990) ................8, 14

*Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98 (3d Cir. 1992)..................................33

*Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333 (11th Cir. 2004) ...........................39

*Bayou Bottling Co. v. Dr. Pepper Co.*, 725 F.2d 300 (5th Cir. 1984)......................30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................2

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ..........................................27

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) .................8, 11

*Cal. Comput. Prods., Inc. v. IBM Corp.*, 613 F.2d 727 (9th Cir. 1979) .................27

*Chicago Studio Rental, Inc. v. Ill. Dep't of Commerce*, 940 F.3d 971 (7th Cir. 2019) ...........................................................................................9

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984).............................15

*Covad Commc'ns Co. v. Bellsouth Corp.*, 374 F.3d 1044 (11th Cir. 2004)...........34

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)...........................................7

*Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475 (D. Md. 2008) ...........................................................................................34

*Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015) ...32, 33

*E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs.*, 357 F.3d 1 (1st Cir. 2004) ...........................................................................................37

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394 (3d Cir. 2016) ....................38

*Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333 (11th Cir. 2017) ..................................8

*Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372 (11th Cir. 1997) .......................9

*Four Corners Nephrology Assocs. v. Mercy Med. Ctr.*, 582 F.3d 1216 (10th Cir. 2009) ...........................................................................................35

*Gulf States Reorg. Grp. v. Nucor Corp.*, 822 F. Supp. 2d 1201 (N.D. Ala. 2011), aff'd, 721 F.3d 1281 (11th Cir. 2013) ......................................................33

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018)........................................17

*It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016) ...................21

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ..............passim

*Joseph v. Amazon.com, Inc.*, 46 F. Supp 3d 1095 (W.D. Wash. 2014)...................21

v

*Keller v. Greater Augusta Ass'n of Realtors*, 760 F. Supp. 2d 1373 (S.D. Ga. 2011) ...............................................................................................19

*Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538 (11th Cir. 1996)...15, 23, 29

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................7

*McGee v. First F. Sav. & Loan Ass'n of Brunswick*, 761 F.2d 647 (11th Cir. 1985) ...............................................................................................15

*McWane, Inc. v. FTC*, 783 F.3d 814 (11th Cir. 2015)..............................36

*Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984) ...............................................................................................21

*Monge v. Madison Cnty. Record, Inc.*, 802 F. Supp.2d 1327 (N.D. Ga. 2011) ......40

*Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288 (11th Cir. 2004) .23, 24, 34

*PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521 (N.D. Cal. Apr. 25, 2014) ...............................................................................................35

*QSGI, Inc. v. IBM Global Fin.*, 2012 WL 13019046 (S.D. Fla. July 31, 2012) ...............................................................................................11

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997)........18

*Retina Assocs., P.A. v. S. Baptist Hosp.*, 105 F.3d 1376 (11th Cir. 1997) (per curiam) ...............................................................................................10

*Riley v. Hannibal*, 2017 WL 5235673 (N.D. Ga. June 29, 2017) ...........................39

*Robles v. Humana Hosp.*, 785 F. Supp. 989 (N.D. Ga. 1992)................................13

*Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874 (N.D. Cal. 2011) ....................34

*Schor v. Abbott Labs.*, 457 F.3d 608 (7th Cir. 2006)................................................35

*Servicetrends, Inc. v. Siemens Med. Sys.*, 870 F. Supp. 1042 (N.D. Ga. 1994) .....23, 24, 26, 37

*Spanish Broad. Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065 (11th Cir. 2004) ............................................................................................19

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) ................................38

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991).......................8

*Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254 (11th Cir. 2019)...............13

*Tri-State Broad. Co. v. United Press Int'l, Inc.*, 369 F.2d 268 (5th Cir. 1966).......35

*U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986 (11th Cir. 1993) ..........................23, 24

*U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623 (7th Cir. 2003) .......................9

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)..............................................22

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004)........................................................................................31

*Vesta Corp. v. Amdocs Mgmt.*, 129 F. Supp. 3d 1012 (D. Or. 2015) .....................35

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018) ..............................6

*Warth v. Seldin*, 422 U.S. 490 (1975).......................................................................6

*YMD Records, LLC v. Ultra Enters.*, 361 F. Supp. 3d 1258 (S.D. Fla. 2019) ........19

## OTHER AUTHORITIES

Areeda & Hovenkamp, *Antitrust Law* ¶ 772.............................................................34

Section 3 of the Clayton Act .................................................................................4, 35

Section 1 of the Sherman Act ...................................................................3, 14, 15, 20

Section 2 of the Sherman Act ..........................................................................passim

Article III of the U.S. Constitution ................................................................7, 8, 9, 10

The Court dismissed Plaintiff's Complaint because it was "a quintessential shotgun pleading of the kind the Eleventh Circuit has condemned repeatedly." Order 3, Dkt. 33.  The First Amended Complaint ("FAC") fails to cure those defects; the FAC contains "(1) multiple counts that each adopt the allegations of the preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular cause of action; and (3) a combination of multiple claims against multiple defendants without specifying which defendant is responsible for which act."  *Id*.  Because Plaintiff has ignored this Court's admonitions, Counts I-VI should be dismissed with prejudice.

But the deficiencies in Plaintiff's case run far deeper.  Its lawsuit remains a blunderbuss attempt to transform the unsurprising industry-wide transition from Flash to HTML5 into a sprawling antitrust case without any legal merit.  As to its antitrust claims (Counts I-VI), Plaintiff pleads no facts establishing it has standing to address alleged harm in  "Online Advertising" and "Online Video Advertising" markets—the only ones in which Plaintiff and Google supposedly compete, FAC ¶ 19—nor does it allege harm in the five markets in which it does not participate. And even if Plaintiff could establish standing, these claims suffer from myriad pleading and legal deficiencies supporting dismissal.  Finally, the tortious interference claim (Count VII), alleging "Google contacted one of Plaintiff's

customers" and attempted "to convince [it] that Google offered superior services,"
FAC ¶ 128, also fails to state a claim under Georgia law.

## ARGUMENT

### I.   LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss, a plaintiff must allege a basis for liability
that is plausible and supported by non-conclusory allegations. *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555-56 (2007).  The complaint "must contain 'more than
labels and conclusions, and a formulaic recitation of the elements of a cause of
action will not do.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th
Cir. 2010) (quoting *Twombly*, 550 U.S. at 555)).  A court need not accept as true
conclusory statements or "'[t]hreadbare recitals of the elements of a cause of
action.'" *Id.* at 1333 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### II.   PLAINTIFF FAILS TO CURE ITS SHOTGUN PLEADING.

Plaintiff fails to cure four of the deficiencies outlined in the Court's Order as
to Counts I-VI.

Instruction #1.  The Court instructed Plaintiff not to "include conclusory,
vague, and immaterial facts that do not clearly connect to a particular cause of
action."  Order 5.  Plaintiff ignored that guidance and instead again includes in the
FAC any number of allegations that have no bearing on its claims.

2

For example, Plaintiff describes at length the growth of Google's search engine, FAC ¶¶ 35-40, which plays no role in any cause of action.  Plaintiff also describes Google acquisitions, *id*. ¶¶ 60-68, but does not base any claim on them. And Plaintiff alleges that Google improperly influences the government, *id*. ¶¶ 167-170, but does not state a claim based on such purported influence.

Instructions #2 and #3.  Plaintiff fails to comply with the Court's instructions requiring that it "not incorporate every factual paragraph into each count" and that it "indicate which of the factual paragraphs support each individual count."  Order 5.  Although Plaintiff no longer incorporates *every* paragraph into each of its counts, its causes of action are still boilerplate recitals of the elements of each claim, albeit now with citations to scores of paragraphs—providing no guidance as to the basis for its claims.

For example, Count I targets "[u]nreasonable [r]estraints on [t]rade" in violation of Section 1 of the Sherman Act.  Which agreements does Plaintiff claim restrain trade unreasonably?  Defendants cannot tell, because the only description provided is "as described in ¶¶ 9 and 102-57 above," FAC ¶ 171, a range that includes countless purported actions—many of which are *unilateral*, not the product of agreement.  In which market(s) does Plaintiff claim anticompetitive effect for any particular agreement?  Again, Defendants are left to guess, because

3

Plaintiff merely identifies the *seven* purported markets "described in ¶¶ 6-7 and 69-78 above." *Id.* ¶ 172.

In its meager attempt to comply with the Court's Order, Plaintiff incorporates the same wide swaths of its FAC into numerous counts, includes virtually no unique allegations in any cause of action, and cites numerous paragraphs that have nothing to do with the claims they purportedly support. This table reproduces the lists of factual paragraphs Plaintiff claims support its seven causes of action:

| Count | Paragraphs Cited in Support |
|---|---|
| I (Unreasonable Restraints on Trade) | 6-7, 9, 69-78, 102-157 |
| II (Monopoly Maintenance) | 6-7, 9, 69-78, 102-157 |
| III (Monopoly Leveraging) | 6-7, 9, 69-78, 102-157, 159-165 |
| IV (Attempted Monopolization) | 9,      102-157 |
| V (Exclusive Dealing—Sec. 2) | 6-7,   69-78, 126, 132-157 |
| VI (Exclusive Dealing and Tying—Sec. 3) | 6-7,   69-78, 126, 131-157 |
| VII (Tortious Interference) | 127-130 |

As this table demonstrates, Counts I-VI rely on a nearly identical set of rambling allegations. Plaintiff asserts that paragraphs 9, 69-78, and 102-157 all support the first four Counts. Paragraph 9 is a summary paragraph; paragraphs 69-78 purport to allege seven different "relevant markets," many of which bear little relevance to the causes of action in which they are cited; and paragraphs 102-157 describe a jumble of actions supposedly taken by one or more Defendants.

4

It is unclear which acts and which supposed "relevant markets" pertain to which causes of action, since Plaintiff alleges that all acts and all markets apply to nearly all of those Counts.  Plaintiff does not even bother to correlate alleged conduct labelled in the body of the FAC by an antitrust offense—for example, "Monopolistic Leveraging" (FAC ¶¶ 103-107) and "Exclusive Dealing" (FAC ¶¶ 132-133)—with the causes of action that bear those labels (Count III and Counts V-VI, respectively).  Instead, Plaintiff cites the same massive swath of conduct allegations as support for each of Counts I, II, III, and IV, and a subset of that swath (FAC ¶¶ 126, 132-157) as support for Counts V and VI.

A closer examination of paragraphs 102-157 reveals any number of them to be irrelevant to the claims they supposedly support.  For example, Counts V and VI target "exclusive contracts," but reference allegations of "Unilateral Setting and Altering of Technological Standards (FAC ¶¶ 137-139), "Manipulative and Technological Blocking, Exclusion, Downgrading, and Denial of Interoperability" (FAC ¶¶ 140-141), "Preferential Treatment of Google Products and Services (FAC ¶¶ 142-148), "Denial of Interoperability and Purposeful Incompatibility (FAC ¶ 149), "Opacity as [t]o Function, Pricing and Data" (FAC ¶¶ 150-151), and "Predatory Pricing" (FAC ¶¶ 152-154)—none of which has a thing to do with any purportedly exclusive deal.  The same is true of Counts I-IV, all of which purport

to rely upon the entirety of the diverse purported conduct identified in paragraphs 102-157.

Instruction #4.  Finally, Plaintiff fails to "identify what precise conduct is attributable to each individual defendant separately in each count when asserting a single count against multiple defendants."  Order 5.  Plaintiff asserts Counts I-VI against Google, YouTube and Alphabet.  But contrary to the Court's instruction, Plaintiff does not specify in those Counts which conduct is attributable Google, which to Alphabet, and which to YouTube.  Indeed, Plaintiff alleges no affirmative conduct by Alphabet, and virtually none by YouTube, anywhere in the FAC.

Plaintiff compiles a laundry list of public allegations against Google, most of which have no connection to Plaintiff, and none of which is properly matched to Counts I-VI.  The FAC thus fails to give Defendants "adequate notice of the claims against them and the grounds upon which each claim rests."  *Vibe Micro v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).  Counts I-VI should be dismissed with prejudice.

## III.  PLAINTIFF LACKS STANDING TO SUE.

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (quoting *Warth v. Seldin*, 422 U.S.

490, 498 (1975)).  Plaintiff fails to allege how Defendants injured it in five of the markets it alleges—Internet Search, Licensable Mobile Device Operating Systems, Search Advertising, Ad Server, and Web Browser.  Instead, Plaintiff asserts only that it "is a user, customer, and/or consumer of Google products and services" in these supposed markets in which it does not compete with Google.  FAC ¶ 19. That is insufficient to establish Article III or antitrust standing to pursue alleged harm in those markets.  With respect to the alleged Online Advertising and Online Video Advertising markets—the only ones in which Plaintiff conceivably could have been injured—Plaintiff cannot show that it satisfies the more rigorous requirements for antitrust standing.

### A.    Plaintiff Must Establish Article III and Antitrust Standing.

Article III of the U.S. Constitution prohibits federal courts from adjudicating a claim unless a plaintiff demonstrates: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To satisfy this burden, "a plaintiff must clearly allege facts demonstrating each element."  *Aaron Private Clinic*, 912 F.3d at 1336 (internal quotation marks omitted).  This requirement applies "for *each claim* [plaintiff] seeks to press."

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added).

"In addition to the basic . . . 'injury in fact' required by Article III . . . , a private plaintiff who seeks damages under the antitrust laws . . . must establish 'antitrust standing.'" *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1340 (11th Cir. 2017). "First, a court should determine whether the plaintiff suffered 'antitrust injury,'" *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir. 1991), "which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489 (1977). Next, "the court should determine whether the plaintiff is an efficient enforcer of the antitrust laws," *Todorov*, 921 F.2d at 1449, by considering:

> 1) the existence of a causal connection between the antitrust violation and the alleged injury; 2) the nature of plaintiff's alleged injury; 3) the directness or indirectness of the asserted injury and the related inquiry of whether the damages are speculative; 4) the potential for duplicative recovery or complex apportionment of damages; and, finally, 5) the existence of a more direct victim of the alleged anti-competitive conduct.

*Austin v. Blue Cross & Blue Shield*, 903 F.2d 1385, 1388 (11th Cir. 1990).

## B.   Plaintiff Does Not Plead Facts To Establish Article III or Antitrust Standing in the Non-Online Advertising Markets.

Like Plaintiff's original Complaint, the FAC is full of conclusory allegations of purported conduct that impacted seven markets. FAC ¶¶ 69-70. But the *only*

injury Plaintiff alleges *it* suffered is that its *online advertising business* allegedly lost customers due to what Plaintiff calls "Google's restrictions on Flash, and the way in which Google and YouTube implemented them."  FAC ¶ 120.

Plaintiff now asserts that in addition to being Google's competitor in the alleged Online Advertising and Online Video Advertising markets, "Inform is also a user, customer and/or consumer of Google products and services."  *Id*. ¶ 19.  But nowhere does the FAC allege any specific injury that *Plaintiff* suffered in any of the five "markets" in which Plaintiff does not compete with Google.  Instead, it repeats general allegations of harm to consumers.  Such "threadbare" and "vague" allegations "do not establish any of the elements of Article III standing."  *Aaron Private Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1338 (11th Cir. 2019); *see also Florida Seed Co. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) ("plaintiff must *show* that it is a customer . . . in the relevant antitrust market").

Plaintiff also cannot establish antitrust standing.  Its conclusory assertion that it is a "user, customer, and/or consumer of Google products and services," FAC ¶¶ 19, says nothing about any injury, much less antitrust injury.  Plaintiff does not allege, for example, that it paid more, or faced reduced output or quality for any product, as a result of anything Defendants did.  *See, e.g.*, *Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce*, 940 F.3d 971, 978 (7th Cir. 2019) (plaintiff

9

must assert injury to *itself*); *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626-27 (7th Cir. 2003) ("A private plaintiff must show antitrust injury—which is to say, injury by reason of those things that make the practice unlawful, such as reduced output and higher prices.").  The Court should dismiss Plaintiff's claims regarding conduct in the alleged Internet Search, Licensable Mobile Device Operating Systems, Search Advertising, Ad Server, and Web Browser markets. *See, e.g.*, *Retina Assocs., P.A. v. S. Baptist Hosp.*, 105 F.3d 1376, 1384 (11th Cir. 1997) (per curiam) ("summarily dismiss[ing]" claim that "ha[d] absolutely no relationship to the [conduct] alleged by Plaintiff and ha[d] caused the Plaintiff no damages").

## C.     Plaintiff Lacks Antitrust Standing To Pursue Harm in the Alleged Online Advertising and Online Video Advertising Markets.

The only markets in which Plaintiff conceivably could have Article III standing are the alleged Online Advertising and Online Video Advertising markets in which Plaintiff claims it "directly compete[s] with Google."  FAC ¶ 2.  Plaintiff alleges its business "plummet[ed]" when "Google's restrictions on Flash, and the way in which Google and YouTube implemented them," "severely impacted . . . Inform's downstream digital publishers."  *Id*. ¶ 120.  As discussed below, those allegations are insufficient to establish antitrust standing.

### 1.     Plaintiff Has Not Suffered Antitrust Injury.

Plaintiff's claimed lost profits in the online advertising markets are not an antitrust injury because Plaintiff does not allege loss caused "by reason of anything forbidden in the antitrust laws." *Brunswick Corp.*, 429 U.S. at 488; *see also QSGI, Inc. v. IBM Global Fin.*, 2012 WL 13019046, at *3 (S.D. Fla. July 31, 2012) (no antitrust injury where harm is to "individual competitor, not . . . to competition generally," warranting dismissal). As the FAC shows, HTML5 eclipsed Flash because the market chose HTML5. FAC ¶¶ 110-122.[1] Plaintiff nowhere alleges how the multi-year, industry-wide adoption of HTML5, a free, open-standards technology, *id.* ¶ 122, away from a "proprietary technology," Flash, *id.*, resulted in injury to Plaintiff arising from anticompetitive harm in the Online Advertising market or Online Video Advertising market, as opposed to lawful competition.

As the FAC concedes, by 2014 Plaintiff (and its advertising customers) knew Google was moving away from Flash and towards HTML5's competing technology. *Id.* ¶ 113. By January 2015, YouTube likewise made clear its intent to transition away from Flash. *Id.* But it was not until 2017 that Google changed

---

[1] Plaintiff concedes that HTML5 is "open source technology" that was developed as an "alternative to using Flash to play video content on websites." *Id.* ¶ 122. The original Complaint further concedes: "Over the years, Google, and the developers of other web browsers, raised various concerns with Flash." Compl. ¶ 117. Plaintiff deleted those inconvenient concessions from the FAC.

Chrome's default settings to disable Flash. *Id*. ¶ 116. Thus, even the facts pled in the FAC do not support the unfounded conclusion that Google gained customers "overnight," *id.* ¶ 120, due to Google's adoption of HTML5 technology.

The FAC also fails to allege that Google prevented Plaintiff or other competitors in the alleged Online Advertising market from making their services compatible with Google's Chrome browser—the key assumption in Plaintiff's causal chain. For example, the FAC does *not* allege Google limited anyone's ability to create HTML5 videos or required the use of a Google-owned product to do so. Nor does it allege that any third party's HTML5 videos were treated differently from any other HTML5 videos when viewed using Google Chrome. Indeed, it does not (and cannot) allege that Chrome was the only web browser to transition away from Flash or to impose similar limitations on video content.[2]

To the extent Plaintiff suffered any injury, it has not alleged facts showing that Google's conduct caused it, or that the injury resulted from anything the antitrust laws prohibit. As made clear yet again in the FAC, the alleged injury is

---

[2] Plaintiff alleges that Google controls "autostart" functionality for videos in Chrome, *id.* ¶¶ 122-23, but never actually alleges that its videos were in any way impacted (*e.g.*, not "auto-starting"). At most, Inform vaguely claims that Chrome merely "*enables* Google to allow autoplay when it serves Google and to effectively shut down Inform's . . . video player," but it never actually claims that Google *did* deploy autostart in an anticompetitive way. *Id.* ¶ 123 (emphasis added).

the result of Plaintiff's apparent decision not to adapt to the changing market between 2014 and 2017 by asking its advertisers to create HTML5 video content, instead of continuing to use outdated Flash technology. *See Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254, 1264 (11th Cir. 2019) (affirming dismissal when plaintiff failed to "allege[] facts showing it could have been injured in the ways alleged"). Google did not force Plaintiff to make that decision.

### 2.   Inform Is Not a Proper Plaintiff.

Plaintiff also is not an efficient antitrust enforcer of this claim. Plaintiff acknowledges its "injuries were only an indirect result of whatever harm may have been suffered," *Assoc'd Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 541 (1983), by "downstream digital publishers," FAC ¶ 120. Thus, there unquestionably are better plaintiffs to sue if such actions were anticompetitive: the "dozens" of publishers allegedly directly impacted, or Adobe itself. *See id.* at 542; *Robles v. Humana Hosp.*, 785 F. Supp. 989, 999 (N.D. Ga. 1992) (antitrust standing lacking when there were "two more easily imagined efficient enforcers").

Plaintiff's alleged injury also is indirect: Based on the allegations, any such injury would have occurred only if: (1) a publisher provided video advertising space on its website to Plaintiff; (2) Plaintiff selected advertisements for that space that were not compatible with HTML5; (3) a consumer viewed the publisher's

website using Chrome; and (4) the consumer would have clicked on or viewed the ad but did not do so because of Chrome's Flash-based limitations.  FAC ¶¶ 85-86, 118.  Only then, because *the publisher* was injured, would Plaintiff allegedly suffer a derivative injury.  *Id.* ¶ 122.  Courts routinely dismiss claims on antitrust standing grounds where, as here, "the chain of causation between [its] injury and the alleged restraint . . . contains several somewhat vaguely defined links."  *Assoc'd Gen. Contractors*, 459 U.S. at 540; *see also Austin*, 903 F.2d at 1392.  Those facts also make Plaintiff's claim highly speculative, which "militates still further in favor of the conclusion that [it] lack[s] antitrust standing."  *Id.* at 1393.

Finally, there is a high likelihood of duplicate recoveries here in the event of liability.  Every other impacted player in Plaintiff's view of the world—including, *inter alia*, Adobe, publishers, and advertisers—would also potentially claim entitlement to recovery.  *See Assoc'd Gen. Contractors*, 459 U.S. at 543-44.

## IV.  PLAINTIFF FAILS TO PLEAD A SECTION 1 CLAIM (COUNT I).

Count I asserts a Sherman Act Section 1 violation through unidentified agreements that allegedly restrained trade.  But Plaintiff has not alleged a claim under the antitrust rule of reason—which would require "either actual or potential harm to competition," and "identify[ing] the relevant market in which the harm occurs," *Jacobs*, 626 F.3d at 1336—nor has it properly pled a *per se* tying claim.

14

**A.     Plaintiff Does Not Plead an Actionable Agreement.**

Plaintiff's Section 1 claim alleges that Defendants entered into agreements *among themselves*. FAC ¶¶ 173-174. Plaintiff identifies no particular agreements Defendants entered into among themselves, or why they are anticompetitive. Even if it had, "A parent corporation and its subsidiary are incapable of engaging in the concerted activity required for a violation of section 1 of the Sherman Act." *McGee v. First F. Sav. & Loan Ass'n of Brunswick*, 761 F.2d 647, 648 (11th Cir. 1985) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)).[3]

**B.     Plaintiff Does Not Adequately Allege Any Unreasonable Restraint of Trade in a Properly Defined Antitrust Relevant Market.**

Plaintiff also fails to demonstrate that any agreements unreasonably restrain trade in a properly alleged relevant antitrust market. To plead "unreasonableness" under the antitrust rule of reason, a plaintiff must identify and properly define a relevant market and then adequately allege that harm to competition occurred or will occur in that market. *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538,

---

[3] As in the original Complaint, Plaintiff vaguely references agreements between Google and unidentified third parties. FAC ¶¶ 145, 156. Those conclusory allegations are legally insufficient and fail to plead harm to competition in a properly defined relevant market, as discussed below. *See infra* p. 16-19. Plaintiff newly alleges that Google "pays Apple an undisclosed amount . . . to secure the search default across iOS devices," *d.* ¶ 148, but fails to allege how this could have harmed competition or injured Plaintiff.

1551 (11th Cir. 1996).  Plaintiff does neither.

### 1.   Plaintiff Fails To Allege Any Relevant Market.

Count I asserts that the purported harm occurs in "Defendants' Leveraged Monopolies."  FAC ¶ 174.  Plaintiff now makes a few conclusory allegations in an attempt to plead relevant markets, but those they are plainly insufficient.

### a.   Plaintiff Does Not Establish Any of the "Relevant Markets" in Which It Does Not Compete.

With regard to the purported "markets" in which Plaintiff does not compete, Plaintiff now asserts in conclusory fashion that there "are no reasonable substitutes for general Internet search; search advertising; Web Browsers; or licensable mobile operating devices systems" or "ad servers."  FAC ¶ 75.  That is insufficient to "suggest the contours of the relevant . . . product markets."  *Jacobs*, 626 F.3d at 1336.  Plaintiff has not, for example, identified "producers that provide customers of a defendant firm (or firms) with alternative sources for the defendant's product or services," nor explained why they should not be included in the relevant market.  *Id*. at 1337.  Nor has it included "factual allegations of the cross-elasticity of demand or other indications of price sensitivity that would indicate whether consumers treat [general Internet search, search advertising, Web Browsers, licensable mobile operating devices systems, or ad servers] differently than they do [any other products that serve those same functions]."  *Id.*  In short, Plaintiff has

16

done none of what the Eleventh Circuit has held is necessary to define any of these "markets." *Id.* at 1338 (plaintiffs may not cite lack of discovery to "absolve [themselves] of the responsibility under *Twombly* to plead facts 'plausibly suggesting' the relevant [market's] composition").

### b. Plaintiff Does Not Establish Online Advertising as a Relevant Market.

Plaintiff provides slightly more detail regarding the purported "markets" in which it allegedly competes ("online advertising services" and "online video advertising"), FAC ¶ 76, but those allegations, too, fail to pass muster. Plaintiff conjures a market limited to a single form of advertising—online advertising, FAC ¶ 76—but "many courts have rejected antitrust claims reliant on proposed advertising markets limited to a single form of advertising," *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1123 (9th Cir. 2018).

Plaintiff's unexplained assertions that online advertising "reaches a distinct group of potential customers" and "can be continuously tracked," FAC ¶ 76, fall short as well. Plaintiff offers no explanation or support for the claim that online advertising reaches different customers than other forms of advertising.[4] At most,

---

[4] Nor does Plaintiff explain why each "component market is not substitutable for the others." *Id.* ¶ 76. For example, stating that "[s]ocial media advertising is employed on a closed . . . network and targeted to users of the social network" does

17

it suggests online advertising is more effective, but that does not mean it is not

interchangeable with those other forms of advertising.  *Queen City Pizza, Inc. v.*

*Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997).

> ### c. Plaintiff Does Not Establish Online Video Advertising as a Relevant Market.

Plaintiff also fails to plead facts necessary to establish the existence of a

distinct Online *Video* Advertising market.  Plaintiff offers one conclusory sentence

to describe why Online Video Advertising should be treated as a distinct market:

"because they are directed at different audiences, often delivered on different

platforms and the decision as to whether to employ . . . video versus non-video

advertisements are driven by the desire to convey the message in the best way for

the brand or advertiser."  FAC ¶ 76.  But *any* choice about advertising is driven

"by the desire to convey the message in the best way"—the choice between two

local newspapers may be driven by which would allow the advertiser to best

convey the message, but no one would contend they were in separate markets.

Plaintiff offers no support for the contentions that online non-video and online

video ads are directed at different audiences or delivered on different platforms.

---

not explain whether or not users are also using other networks, or whether
advertisers view these component markets as substitutes.  *Id.*

Rather, Plaintiff shows how online video advertisements overlap with other advertisements.  For example, it concedes that display and video advertising perform the same function.  *Id*.[5]   In short, Plaintiff has merely identified a product—video advertising—within a larger advertising market; it has not properly alleged video advertising as a relevant antitrust market.

### 2.   Plaintiff Fails To Allege Harm Within a Relevant Market.

Even if Plaintiff had pled a relevant antitrust market, it has not alleged harm to competition caused by any agreement.  Count I contains nothing but legal conclusions, which does not satisfy Plaintiff's "burden of demonstrating damage to competition with specific factual allegations." *Jacobs*, 626 F.3d at 1339.[6]

### C.   Plaintiff Fails To Plead a *Per Se* Tying Claim.

Plaintiff asserts that Defendants have engaged in illegal tying and bundling of services by (1) tying the "use of Google's DoubleClick Ad Server with the real-

---

[5] Similarly, Plaintiff admits that video advertisements are embedded on *textual* websites like publisher "articles." *Id.* ¶¶ 87, 89.  Given that publisher articles can often have a mix of advertisements on the same page (*e.g.*, video, display, and textual), Inform fails to explain how video advertisements serve different audiences than the non-video advertisements *on the same website*.

[6] *Compare* FAC ¶¶ 174-175 *with Spanish Broad. Sys. v. Clear Channel Commc'ns*, 376 F.3d 1065, 1078-79 (11th Cir. 2004); *YMD Records, LLC v. Ultra Enters.*, 361 F. Supp. 3d 1258, 1266 (S.D. Fla. 2019); *Keller v. Greater Augusta Ass'n of Realtors*, 760 F. Supp. 2d 1373, 1378 (S.D. Ga. 2011).

time bids from Google's AdX marketplace," (2) tying "the purchase of ads on YouTube . . . with Google's own ad buying tools," and (3) rebranding "its ad platform" to create "a single tool, Google Ad Manager," comprised of Google's DoubleClick for Publishers ad server (which selects and serves advertisements to display on a website) with its AdX ad exchange (which runs a real-time advertising marketplace where advertisers can bid on places to run online ads).  FAC ¶¶ 134-136.  It is unclear whether Plaintiff intends those assertions to constitute part of its Section 1 claim (Count I).

To allege an illegal tying arrangement, a plaintiff must allege: "(1) a tying and a tied product; (2) evidence of actual coercion by the seller that in fact forced the buyer to purchase the tied product; (3) that the seller [has] sufficient market power in the tying product market to force the buyer to accept the tied product; (4) anticompetitive effects in the tied market; and (5) involvement of a not insubstantial amount of interstate commerce in the tied product market."  *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502-03 (11th Cir. 1985).  Plaintiff has not pled any of these elements.

As to Plaintiff's claim that Google has "bundled and illegally tied the use of DoubleClick AdServer with the real-time bids from Google's AdX marketplace," FAC ¶ 134, there is not a single fact explaining what this means or the effect on

20

competition in any market, such as whether anyone was coerced to use either

product or how any such coercion caused any anticompetitive effects.  Bundling

two products for sale is not *per se* unlawful.  *Midwestern Waffles, Inc. v. Waffle

House, Inc*., 734 F.2d 705, 711-12 (11th Cir. 1984) (per curiam).

      With regard to Plaintiff's assertion that "Google and YouTube have . . .

illegally tied the purchase of ads on YouTube . . . with Google's own ad buying

tools," FAC ¶ 135, Plaintiff fails to allege that Google coerced Plaintiff into using

Google's ad buying tools to advertise on YouTube.  That is fatal.  *See Joseph v.

Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1103-04 (W.D. Wash. 2014).  Nor has

Plaintiff pled that YouTube has sufficient market power to force buyers to

purchase the purportedly tied product—Google's ad buying tools.  Nor has

Plaintiff adequately explained the supposed anticompetitive effects, only vaguely

stating smaller rival tools are "less attractive to advertisers" without any specifics

including whether usage of *Inform's* tools were actually impacted.  FAC ¶ 135.

      Finally, "rebranding" two products under a single name does not state a *per

se* tying claim.  Plaintiff does not allege that Google's DFP ad server excludes ads

sold via non-Google ad exchanges, and thus has not alleged an anticompetitive

effect. *See It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 684-85 (4th Cir.

2016).  Nor has Plaintiff pled that Google has market power in any purported Ad

Server "market," or that Google can coerce use of its AdX exchange.  Plaintiff

provides no description of the Ad Server "market," whether alternative

technologies are available to publishers and advertisers to serve ads, or whether

and how Google can raise prices or exclude competitors.  And apart from the

vague statement that Google "ties its stable of advertising services together and

compel[s] use of Google services," FAC ¶ 136, Plaintiff fails to allege that any

advertiser has actually been coerced into using AdX due to DFP's alleged market

prevalence.  *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258,

1263 (11th Cir. 1998).

## V.   PLAINTIFF FAILS TO PLEAD A SECTION 2 CLAIM FOR MONOPOLY MAINTENANCE (COUNT II).

In Count II, Plaintiff purports to bring a claim, under Section 2 of the

Sherman Act, for monopoly maintenance.  The FAC differs from the original

Complaint in that it tacks on a new purported "market" in which Plaintiff allegedly

competes: the Online Video Advertising Market.  But that addition changes

nothing: Plaintiff fails to cure the substantive failings of the original Complaint.

To state a claim for monopoly maintenance, a plaintiff must allege "(1) the

possession of monopoly power in the relevant market and (2) the willful . . .

maintenance of that power as distinguished from growth or development as a

consequence of a superior product, business acumen, or historic accident." *United*

*States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).  "[M]onopoly power" is "the power to control prices in or to exclude competition from the relevant market."  *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294 (11th Cir. 2004).  While under certain conditions, monopoly power may be inferred from a predominant share of the market, courts do not find "the existence of actual monopoly established by a bare majority share."  *U.S. Anchor Mfg., Inc. v. Rule Indus. Inc.,* 7 F.3d 986, 1000 (11th Cir. 1993).  Instead, "the classic guidelines of market share sufficient to constitute monopoly power" are that "90% market share constitutes a monopoly, 64% is doubtful, and 33% is not enough."  *Servicetrends, Inc. v. Siemens Med. Sys.*, 870 F. Supp. 1042, 1052 n.4 (N.D. Ga. 1994).

To allege a relevant market, a plaintiff "must define both (1) a geographic market and (2) a product market," and for each "must present enough information in their complaint to plausibly suggest the contours of" those markets, including the "alternative sources" for a defendant's products.  *Jacobs*, 626 F.3d at 1336-37; *accord Levine v. Cent. Fla. Med. Affiliates*, 72 F.3d 1538, 1552 (11th Cir. 1996).  The willful maintenance element "requires predatory or exclusionary acts or practices that have the effect of preventing or excluding competition within the relevant market."  *Morris*, 364 F.3d at 1294.  "[A]nticompetitive conduct" is "conduct without a legitimate business purpose that makes sense only because it

23

eliminates competition." *Id*. at 1295.

Plaintiff's monopoly maintenance claim fails because Plaintiff fails to allege that any Defendant has a monopoly, to define the markets at issue, or to plead any anticompetitive conduct that could facilitate maintenance of a monopoly.

### A.   Plaintiff Fails To Plead Monopoly Maintenance as to the Alleged Online Advertising and Online Video Advertising Markets.

Plaintiff's monopoly maintenance claim as to the alleged Online Advertising and Online Video Advertising markets fails for three independent reasons.

### 1.   Plaintiff Does Not Plead That Any Defendant Has Monopoly Power in the Alleged Online Advertising or Online Video Advertising Markets.

Plaintiff has not pled the most basic fact necessary for a monopoly maintenance claim: that any Defendant currently has monopoly power in either the alleged Online Advertising market or Online Video Advertising market.  At most, Plaintiff claims Google is "achieving" monopoly power, but does not possess it. FAC ¶ 70.  Plaintiff alleges that Google has a 49% share in the Online Advertising market, *id*. ¶ 70(b), and a 52% share in the Online Video Advertising market, *id*. ¶ 70(c).  Neither percentage alone can constitute monopoly power.  *U.S. Anchor Mfg.*, 7 F.3d at 1000; *Servicetrends*, 870 F. Supp at 1052 n.4.  But Plaintiff pleads nothing beyond those bare alleged market shares—not that the structure of any

market is such that percentages as low as these could create monopoly power,[7] nor that barriers to entry exist in these markets,[8] nor any facts that could support the notion that Google can raise prices or exclude competitors in those markets.

Even if Plaintiff had properly alleged that any Defendant possessed monopoly power in some purported "market," for the reasons discussed above, Plaintiffs have failed to allege that they are proper relevant antitrust markets pursuant to Eleventh Circuit precedent. *See supra* at pp. 16-19.

### 2.    Plaintiff Does Not Plead Anticompetitive Conduct.

Plaintiff also fails to plead any anticompetitive conduct in the alleged online advertising markets.  As noted, the only conduct allegedly affecting Plaintiff in those markets was the transition from Flash to HTML5.  *See supra* pp. 11-14.  That transition did not exclude or harm competition for a number of reasons.

*First*, Plaintiff does not allege that it (or any other competitor) was excluded

---

[7] Plaintiff originally alleged that Facebook possesses 20% market share in the Online Advertising market.  Compl. ¶ 87(b).  That allegation has now been deleted from the FAC.  Nevertheless, Plaintiff fails to make *any* allegations regarding the presence of competitors in the Online Advertising or Online Video Advertising markets.  The FAC therefore offers no factual support for the proposition that Google does not face rigorous competition in both markets.

[8] Plaintiff pays lip service to asserting "barriers to entry" in various markets, FAC ¶ 77, but provides no allegations that could allow a finder of fact to conclude such barriers exist in the alleged Online and Online-Video Advertising markets.

by the industry-wide adoption of HTML5.  Nor could it: at most, advertisers—

whether Google Ads customers or Plaintiff's—needed to convert advertisements to

HTML5 or produce new HTML5-compatible content.  FAC ¶ 114.  Plaintiff does

*not* allege Google blocked Plaintiff's customers from converting to HTML5 or

continuing to use Plaintiff's online video advertising technology.  As an open-

standards technology, FAC ¶ 122, HTML5 is by definition available to the entire

industry.  Plaintiff alleges that Chrome's autoplay function for videos "enables

Google to . . . effectively shut[s] down Inform's and other competitors' video

players," but does not actually claim its videos were impacted by any lack of

autoplay functionality nor explain why lack of autoplay causes it anticompetitive

harm.  *Id.* ¶ 123.  And even if Plaintiff's videos were not being autoplayed, it

concedes that was only based on a user's propensity for watching videos,

regardless of the source of the ads.  *Id.*[9]

---

[9] Plaintiff originally alleged that Google exempted non-Google sites that display
high volumes of videos from these limitations—including sites operated by its
competitors (Amazon and Microsoft), Compl. ¶ 131, making clear there is no
monopolization scheme.  Plaintiff now deletes that allegation, but it is still clear
from the remaining allegations that Google did not shift to HTML5 for
anticompetitive purposes, nor implement the shift in an anticompetitive way.  FAC
¶ 113 (Google offered "Flash-to-HTML5 conversion tools" and "backup HTML5
video advertisement[s] to run when Flash was disabled"); *id.* ¶ 119 (Google
"offered to convert to HTML5 for free"); *id.* ¶ 122 ("HTML5 is open source
technology").

*Second*, Plaintiff does not (and could not) plausibly allege this design decision lacks a valid business purpose, which courts for decades have required to impose liability in such situations.  *See, e.g.*, *Cal. Comput. Prods., Inc. v. IBM Corp.*, 613 F.2d 727, 744 (9th Cir. 1979) ("IBM, assuming it was a monopolist, had the right to redesign its products to make them more attractive to buyers . . . It was under no duty to help [competitors] survive or expand."); *Allied Orthopedic Appliances v. Tyco Health Care Grp.*, 592 F.3d 991, 999-1000 (9th Cir. 2010) ("product improvement by itself does not violate Section 2, even if it is performed by a monopolist and harms competitors as a result").  Plaintiff acknowledges that Chrome's autoplay restrictions protected users from being bombarded with video and audio that were not "central to the webpage" on sites where users did not expect such content, while "keeping central content playing without interruption." FAC ¶¶ 115, 123.  Although Plaintiff deleted certain concessions after Defendants highlighted them in their motion to dismiss, the FAC *still* acknowledges a legitimate business justification for Google's switch to HTML5 and introduction of the autoplay restrictions: improving user experience.  *Id.*

*Third*, Plaintiff has not pled facts demonstrating durable, industry-wide harm to competition in an alleged Online Advertising market.  Conduct that harms a competitor, but not competition, does not violate the antitrust laws.  *Brown Shoe*

*Co. v. United States*, 370 U.S. 294, 320 (1962).  Plaintiff alleges only increased costs associated with moving *existing* content to HTML5, FAC ¶ 114—not forward-looking costs during this years-long transition—and makes conclusory allegations regarding its lost profits, *id*. ¶ 120.  Plaintiff does not plead facts demonstrating that this change in technology caused harm to many of its own customers, let alone market-wide harm, and its attempt to cast a wider net falls flat. *Compare* FAC ¶ 120 (alleging "*dozens* of digital advertisers and publishers were severely impacted . . . including *many* of Inform's . . . publishers,") (emphases added) *with id.* at ¶ 93 (Plaintiff alone had a network of "approximately 5,000 publishers" and untold number of advertisers).  Such minimal allegations regarding an unidentified group of competitors offering only online video advertisements (which is but a segment of the alleged Online Advertising market that includes text and other online ads), does not suffice to demonstrate harm to competition.

### B.   Plaintiff Fails To State a Claim for Monopoly Maintenance as to the Alleged Markets in Which It Does Not Compete.

Even if Plaintiff had standing to pursue claims relating to markets other than the alleged Online Advertising or Online Video Advertising markets, its monopoly maintenance claim regarding those alleged markets should be dismissed because Plaintiff has not pled facts demonstrating that these other markets are relevant antitrust markets, or that Defendants engaged in anticompetitive conduct that has

allowed Defendants to maintain an alleged monopoly in those markets.

The FAC provides no factual basis for Plaintiff's conclusory allegation that there are relevant antitrust markets consisting of Internet Search, Licensable Mobile Device Operating Systems, Search Advertising, Ad Servers, and Web Browsers. FAC ¶¶ 69-70. Although Plaintiff now alleges "the relevant geographic market is both the United States and world-wide," *id.* ¶ 72, it otherwise still pleads no facts describing the markets' contours, including the extent to which other technologies are substitutable for these products, or otherwise explaining why these products qualify as relevant antitrust markets. Instead, Plaintiff has added one paragraph that alleges, with no support or detail, that there are "no reasonable substitutes" for the listed markets. *Id.* ¶ 75. Plaintiff still does nothing more than allege Google's purported market share, with no other facts to suggest Google has the ability to exclude competition or raise prices. That is insufficient as a matter of law. *See Jacobs*, 626 F.3d at 1336; *Levine*, 72 F.3d at 1552.

As to the alleged conduct, Plaintiff lists, across 55 paragraphs (¶¶ 102-57), numerous examples of supposedly "anticompetitive conduct," FAC ¶ 102, that assertedly offer factual support for its monopoly maintenance claim, *id.* ¶ 176. But some of those allegations are explicitly labeled as supporting other counts (*i.e.*,

monopoly leveraging, *id*. ¶¶ 103-107, or exclusive dealing, *id*. ¶¶ 132-33).[10]  And as to all of these allegations, Plaintiff again fails to explain how the alleged conduct harmed competition or how Google maintained any alleged monopoly as a result of such conduct.  Nor does Plaintiff allege how it possibly could have been harmed by this alleged conduct in markets in which Plaintiff does not compete.

For example, Plaintiff asserts that Google "influence[s] industry standards in its own favor," FAC ¶ 108, and alleges that Google effectively sets industry standards "through changes to Chrome's functionality," *id*. ¶ 137.  But Plaintiff does not explain how that alleged influence negatively impacts competition.  Plaintiff also alleges that Google gives preferential treatment to its own products and services, FAC ¶¶ 142-43, but fails to explain how that alleged preferential treatment has harmed *competition* (rather than isolated competitors) in the relevant market, or how it has affected Plaintiff.  There is nothing unlawful about giving preferential treatment to one's own products, as that is the essence of competition.  *E.g., Bayou Bottling Co. v. Dr. Pepper Co.*, 725 F.2d 300, 304 (5th Cir. 1984).

Finally, Google's alleged limiting of interoperability with competitors' technologies and alleged refusal to share Google-owned data, *id*. ¶¶ 141, 149-51,

_____

[10] These allegations are addressed in the portions of the brief directed at Plaintiff's "Monopoly Leveraging" and Exclusive Dealing claims.  *See infra* pp. 34-38.

cannot constitute anticompetitive or exclusionary conduct, because the Sherman

Act imposes "no duty to aid competitors." *Verizon Commc'ns Inc. v. Law Offices*

*of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004).

Beyond those examples, Plaintiff makes a host of wholly conclusory

allegations with zero description or explanation:

- No facts supporting the claim that Google "coerces users into using Google services by changing and/or altering algorithms to exempt" Google platforms, products, and services. *Id.* ¶ 138.

- No explanation of how Google supposedly prioritized its own search services or products in its search algorithms. *Id.* ¶ 143.

- No explanation of how an alleged "last look" for advertisers to outbid other advertisers facilitates monopolization of any market. *Id.* ¶ 144.

- No description of how "Google has usuriously increased the cost of rival online video platforms' use of Google's goods and services," what contracts have been unilaterally terminated, or how Google has refused to deal or do business with competitors. *Id.* ¶ 145.

- No identification of a "competing site[]" that Google misappropriated content from to place in its own search results, or a "small business[]" that has been restricted from advertising on competing search platforms. *Id.* ¶¶ 145, 146.

- No explanation as to how Google has promoted the use of Chrome on laptops, personal computers, and workstations or why Chrome setting Google search as the default is anticompetitive. *Id.* ¶ 147.

- No explanation as to how Google prevents users from switching search engines on iOS devices. *Id.* ¶ 148.

- No explanation of why other market participants cannot compete with

31

Google's free offerings or how Google offering products for free has negatively impacted Plaintiff. *Id*. ¶¶ 152-54.

- No facts supporting the claim that alleged pre-installation of Google Search and Google Chrome on Android operating system devices has been "to the detriment of Inform and other competitors." *Id.* ¶¶ 155-157; *see also supra* p. 37.

In short, Plaintiff's allegations of purportedly anticompetitive conduct are nothing more than a rehashing of various and assorted unproven public allegations against Google, with no effort to explain how any such alleged conduct possibly could have excluded competitors, enabled Google to maintain any purported monopoly, harmed competition, or caused injury to Plaintiff itself.

## VI.   PLAINTIFF DOES NOT PLEAD A SECTION 2 CLAIM FOR ATTEMPTED MONOPOLIZATION (COUNT IV).

Count IV asserts that Defendants have attempted to monopolize the alleged Web Browser, Online Advertising and Online Video Advertising markets.  A plaintiff bringing such a claim must plausibly allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in a relevant market.  *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1263 (11th Cir. 2015) (internal quotation marks omitted).  This claim fails for the same reasons as the monopoly maintenance claim:  Plaintiff does not adequately define these purported markets and does not allege how any of Defendants' conduct was

32

predatory or anticompetitive.  *See supra* Section V.

With respect to the alleged Online Advertising market in particular, Plaintiff also has not sufficiently pled a dangerous probability Defendants will attain monopoly power.  Plaintiff alleges Google has a 49% share.  FAC ¶ 70(b)—short of what courts require to state such a claim.  *See, e.g.*, *Duty Free Ams.*, 797 F.3d at 1264; *Gulf States Reorg. Grp. v. Nucor Corp*., 822 F. Supp. 2d 1201, 1237 (N.D. Ala. 2011) (when "alleged monopolist's market share is less than 50% of the market . . . , there" is "no dangerous probability of success as a matter of law"), *aff'd*, 721 F.3d 1281 (11th Cir. 2013).

With respect to both the alleged Online Advertising and Online Video Advertising markets, even when a defendant possesses the requisite "significant market share," other relevant factors may demonstrate it is unlikely to succeed in monopolizing the relevant market.  *See, e.g.*, *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992) (strength of competition from rival firms and barriers to entry among "other factors" relevant to assessing dangerous probability).

Here, those factors counsel in favor of dismissal.  Plaintiff now deletes its concession that Facebook possesses a 20% market share in the Online Advertising market, *see* Compl. ¶ 87(b), and instead simply ignores the existence of competitors in both markets altogether.  That omission is just as damning—there is

no indication that Google's conduct has adversely impacted any competitor or blocked competitors from entering a relevant market. And, as to barriers to entry, Plaintiff has made only general allegations that supposedly apply to all seven alleged relevant markets, some of which seemingly could not possibly apply to the Online Advertising or Online Video Advertising market. *See* FAC ¶ 77.

## VII.  PLAINTIFF CANNOT ALLEGE A MONOPOLY LEVERAGING CLAIM (COUNT III).

Plaintiff's attempts to revive its leveraging claim are futile. There simply does not exist a free-standing "monopoly leveraging" claim under U.S. antitrust law. Monopoly leveraging "can exist *only* where the requirements for the attempt to monopolize offense in the second market have been satisfied." Areeda & Hovenkamp, *Antitrust Law* ¶ 772, at 237 (2015).[11] At most, leveraging may apply to Plaintiff's other theories, *if anticompetitive conduct is adequately alleged* there. *See, e.g.*, *Covad Commc'ns Co. v. Bellsouth Corp.*, 374 F.3d 1044, 1047 n.4 (11th Cir. 2004); *Morris Commc'ns*, 364 F.3d at 1293 n.11.

In other words, because "monopoly leveraging" itself does not "constitute anticompetitive conduct," asserting it as a cause of action does not cure otherwise

---

[11] *See also Safeway Inc. v. Abbott Labs.*, 761 F. Supp. 2d 874, 895 (N.D. Cal. 2011); *Daisy Mountain Fire Dist. v. Microsoft Corp.*, 547 F. Supp. 2d 475, 487 (D. Md. 2008).

deficient Section 2 claims.  *PNY Techs., Inc. v. SanDisk Corp.*, 2014 WL 1677521, at *9 (N.D. Cal. Apr. 25, 2014); *see Schor v. Abbott Labs*., 457 F.3d 608, 611 (7th Cir. 2006) (rejecting "free-standing theory of 'monopoly leveraging'").  Where, as here, a plaintiff fails adequately to allege anticompetitive conduct separate and apart from the purported leveraging, *see supra* Sections IV, V, VI, labeling a claim "'monopoly leveraging' won't do anything to save it." *Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr.*, 582 F.3d 1216, 1222 (10th Cir. 2009).[12]  There is no authority to support Plaintiff's freestanding leveraging claim (Count III).

## VIII. PLAINTIFF HAS NOT PLED A CLAIM FOR EXCLUSIVE DEALING UNDER SHERMAN ACT SECTION 2 OR CLAYTON ACT SECTION 3 (COUNTS V, VI).

Counts V and VI claim that Google entered into exclusive agreements in violation of the Sherman and Clayton Acts.[13]  To assert an exclusive dealing claim, a plaintiff must plead: (1) an exclusive agreement (2) that substantially forecloses

---

[12] *See also Vesta Corp. v. Amdocs Mgmt.*, 129 F. Supp. 3d 1012, 1035 (D. Or. 2015); *PNY Techs., Inc.*, 2014 WL 1677521, at *9.

[13] The Clayton Act claim fails because Section 3 applies only to tangible commodities.  *See Tri-State Broad. Co. v. United Press Int'l, Inc*., 369 F.2d 268, 270 (5th Cir. 1966).  Plaintiff attempts to shoehorn a tying claim into its Section 3 claim, but alleging that two products are sold together does not amount to exclusive dealing where the purchaser is not foreclosed from purchasing competing products.  *See also supra* Section IV,C (showing why tying claim fails).

competition (3) in a relevant market.  *McWane, Inc. v. FTC*, 783 F.3d 814, 827,

835-36 (11th Cir. 2015).  Plaintiff has not done so, and fails to plead a single

instance where it was unable to compete because Google allegedly had an

agreement with a customer requiring it to deal exclusively with Google.

###### A.     Plaintiff Does Not Adequately Allege Any "Exclusive" Agreement.

Plaintiff asserts that Defendants "entered into anti-competitive, exclusionary,

and unjustified agreements with publishers, advertisers, original equipment

manufacturers, and others."  FAC ¶¶ 194, 201.  Plaintiff makes five allegations

regarding Google's alleged exclusivity with website owners that take advantage of

Google's ad offerings, *id.* ¶ 132, and alleges that Google Ads prevents "sellers and

advertisers from managing search advertising campaigns across Google's Ad

Words and non-Google advertising services," *id*. ¶ 133.  Finally, Plaintiff alleges

that Google and various OEMs agreed to pre-install Google Search on certain

Android devices, and that Google and Apple agreed Google search would be the

default on iOS devices.  *Id*. ¶¶ 148, 156.

The FAC fails to substantiate those exclusive dealing claims with any

details—including the number of publishers, advertisers, or manufacturers with

such agreements, the extent of any alleged foreclosure, or the duration of the

agreements.  The absence of those details are fatal to Plaintiff's exclusive dealing

claims.  *See, e.g.*, *Servicetrends, Inc.*, 870 F. Supp. at 1066; *E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n*, 357 F.3d 1, 6-9 (1st Cir. 2004).

More fundamentally, the FAC fails to describe how such agreements could be viewed as "exclusive."  For example, all the FAC says about exclusivity with regard to Google Ads advertisers is that there are "various restrictions in the AdWords API terms and conditions."  *Id.* ¶ 133.  Similarly, on its AdSense claims, Plaintiff fails to provide even the most basic detail on how anyone was *excluded* from the market, especially given its concession that publishers are free to place competitor ads on their websites alongside Google's ads.  Plaintiff has not identified a single contract between Google and a website owner that bars advertisements from networks that compete with Google, nor has Plaintiff alleged that any such contract harmed Plaintiff's ability to place video advertisements.

Finally, regarding Google's alleged agreements with manufacturers, Plaintiff does not allege any facts about Google somehow blocking rival applications from reaching users.  Plaintiff alleges only that some consumers had Google applications *preloaded* or set as the *default*.  FAC ¶¶ 148, 155-56.  Plaintiff does not allege—nor could it—that consumers are not free to download any other application, and to modify their settings to make such apps the default.  That is not exclusivity.  Plaintiff also fails to allege how this conduct harmed it in any way.

37

**B.     Plaintiff Does Not Adequately Allege That Any "Exclusive Agreement" Substantially Foreclosed Competition.**

The FAC also fails to allege that any agreements substantially foreclosed competition in a properly defined antitrust market.  To begin with, as discussed above, *see supra* pp. 16-19, Plaintiff fails to identify any relevant market in which competition could have been foreclosed.  That "omission, by itself, requires reversal."  *Tampa Elec. Co. v. Nashville Coal Co*., 365 U.S. 320, 329 (1961).

The FAC also fails to provide any detail about whether competition was foreclosed in *any* market, let alone facts from which a Court could determine any foreclosure was "substantial."  *Id.*  Nor could it.  Where, as here, "customers are free to switch to a different product in the marketplace . . . competition has not been thwarted."  *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403-04 (3d Cir. 2016).  Plaintiff does not allege that publishers, advertisers, or manufacturers lack the ability to use Google's competitors' products.

**IX.    PLAINTIFF HAS NOT PLED A CLAIM FOR TORTIOUS INTERFERENCE.**

To state a claim for tortious interference with business relations, a plaintiff must plead facts to establish that the defendant: "(1) acting improperly and without privilege (2) and acting purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business

38

relationship with the plaintiff (4) for which the plaintiff suffered some financial injury." *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1340 (11th Cir. 2004).

In the FAC, Plaintiff alleges that "Google contacted one of Inform's customers, sending them a screenshot to give them a 'heads up' when Inform's floating video player with that client's advertisement appeared next to content that Google misleadingly characterized as objectionable." FAC ¶ 128. Plaintiff further alleges that Google did so in an "attempt to convince Inform's customer that Google offered superior services." *Id*. Plaintiff newly alleges that "Inform eventually lost this customer relationship." *Id*.

Even after a second bite at the apple, Plaintiff does not clearly link Google to Plaintiff's injury, alleging only that it eventually "lost" the customer—not that the loss directly resulted from Google's sales pitch. Instead, Inform again resorts to the vague allegation that Google's conduct interfered "with Inform, its customers and business relationships." *Id*. That is insufficient. Plaintiff fails to allege either that Google directly induced a third party to discontinue a business relationship with Plaintiff or that Plaintiff suffered financial injury. For that reason alone, the Court should dismiss Plaintiff's tortious interference claim. *See Riley v. Hannibal*, 2017 WL 5235673, at *6 (N.D. Ga. June 29, 2017); *Tribeca Homes, LLC v. Marathon Inv. Corp.*, 745 S.E.2d 806, 808 (Ga. Ct. App. 2013).

39

Moreover, Plaintiff still has not alleged that Google acted improperly and without privilege.  Improper conduct is "wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions."  *Disaster Servs. v. ERC P'ship*, 492 S.E.2d 526, 529 (Ga. Ct. App. 1997); *see Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007).

Plaintiff fails to allege that Google engaged in wrongful conduct.  Google allegedly told Plaintiff's customer that Plaintiff was running the customer's ads in connection with content that Google "misleadingly characterized as objectionable" and "that Google offered superior services."  FAC ¶ 128.  But Plaintiff fails to identify how Google's characterization was misleading or explain how Google could have misled a customer that could evaluate on its own whether the website was objectionable.  *See, e.g.*, *Monge v. Madison Cnty. Record, Inc.*, 802 F. Supp.2d 1327, 1338 (N.D. Ga. 2011).  Nor does Plaintiff explain how a business claiming it offers "superior services" could conceivably constitute wrongful conduct.  Plaintiff has described nothing more than lawful competition, and "fair competition is always legal."  *Sommers Co. v. Moore*, 621 S.E.2d 789, 791 (Ga. Ct. App. 2005).

## CONCLUSION

For all these reasons, Plaintiff's FAC should be dismissed with prejudice.

Respectfully submitted this 13th day of November, 2020.

*/s/ Eric P. Schroeder*

BRYAN CAVE LEIGHTON
PAISNER LLP
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar
804091)
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone:  404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

WILLIAMS & CONNOLLY LLP
John E. Schmidtlein*
Carol J. Pruski*
Kimberly Broecker*
*Pro hac vice
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
cpruski@wc.com
kbroecker@wc.com

*Counsel for Defendants Google LLC,
Alphabet, Inc., and YouTube, LLC*

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 13th day of November, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 13th day of November, 2020.

*/s/ Eric P. Schroeder*
Eric P. Schroeder
Ga. Bar 629880