**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

INFORM INC.,

      Plaintiff,

v.

GOOGLE LLC; ALPHABET INC.;
YOUTUBE, LLC; and JOHN DOES 1-
100,

      Defendants.

Civil Action No. 1:19-cv-05362-JPB

**DEFENDANTS' REPLY MEMORANDUM IN
<u>SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT</u>**

# TABLE OF CONTENTS

I.     LEGAL STANDARD ON A MOTION TO DISMISS ........................................2

II.    THE FAC IS ANOTHER SHOTGUN PLEADING .........................................3

III.   PLAINTIFF LACKS STANDING TO BRING SUIT .....................................7

     A.    Plaintiff Does Not Establish Article III or Antitrust Standing in the Markets in Which It Does Not Compete..................................................7

     B.    Plaintiff Lacks Antitrust Standing in the Online Advertising and Online Video Advertising Markets.....................................................9

IV.   PLAINTIFF FAILS TO PLEAD A SECTION 2 CLAIM............................12

     A.    Plaintiff Does Not Plead a Monopoly Maintenance Claim in the Online Advertising or Online Video Advertising Markets................................12

     B.    Plaintiff Does Not Plead a Monopoly Maintenance Claim in Any Other Market. ...............................................................................................15

     C.    Plaintiff's Attempted Monopolization Claim Fails................................17

     D.    Plaintiff Cannot Allege a Monopoly Leveraging Claim........................19

V.    PLAINTIFF FAILS TO PLEAD A SECTION 1 CLAIM............................19

     A.    Plaintiff Has Not Pled a *Per Se* Tying Claim. .....................................20

     B.    Plaintiff Has Not Adequately Alleged an Unreasonable Restraint of Trade in a Properly Defined Antitrust Market. ......................................21

VI.   PLAINTIFF DOES NOT PLEAD EXCLUSIVE DEALING CLAIMS ..........................22

VII.  PLAINTIFF HAS NOT PLED TORTIOUS INTERFERENCE ......................................24

# TABLE OF AUTHORITIES

## STATE CASES

*Kirkland v. Tamplin*, 645 S.E.2d 653 (Ga Ct. App. 2007)............................................................25

## FEDERAL CASES

*Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486 (11th Cir. 1985) ..................................20

*Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364 (11th Cir. 1996) ........................................................................................................................................1

*Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) .................................................................................7

*Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258 (11th Cir. 1998)...................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................2, 9

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)...........................................................................................................................................7

*Atlantic Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328 (1990) ....................................................9

*AWP, Inc. v. Henry*, 2020 WL 6876299 (N.D. Ga. Oct., 28 2020) ..............................................25

*Bela Vista Contractors, Inc. v. Tierra del Mar Condo. Ass'n, Inc.*, 2015 WL 10857529 (S.D. Fla. Oct. 2, 2015)................................................................................................................24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................................2

*Blue Shield v. McCready*, 457 U.S. 465 (1982)...............................................................................7

*Clifford v. Federman*, 2020 WL 377026 (N.D. Ga 2020) (Boulee, J.).............................................7

*Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040 (D. Colo. 2017) ....................................22

*Duty Free Am., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015) ...............................12

*Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86 (2d Cir. 2019) .............................................8

*Eastman v. Quest Diag. Inc.*, 724 F. App'x 556 (9th Cir. 2018).................................................23

*Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333 (11th Cir. 2017) ........................................................8

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335 (S.D. Fla. 2002).....................18

*Glynn-Brunswick Hosp. Auth. v. Becton*, 159 F. Supp. 3d 1361 (S.D. Ga. 2016) ........................13

*Gulf States Reorg. Grp. v. Nucor Corp.*, 466 F.3d 961 (11th Cir. 2006) ......................................10

*In re Alum. Warehouse Antitrust Litig.*, 833 F.3d 151 (2d Cir. 2016) ............................................8

*In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291 (S.D. Fla. 2010) ...............6

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57 (2d Cir. 2019) ...................................11

*It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676 (4th Cir. 2016) .........................................20

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010) ...........................................13

*Lemley v. Red Bull North America, Inc.*, 2017 WL 2126595 (S.D. Ga. May 16, 2017) ...............5

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221 (10th Cir. 2017) ...................6

*Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538 (11th Cir. 1996) ...................................21

*McDowell v. Gonzalez*, 820 F. App'x 989 (11th Cir. 2020) .........................................................7

*McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552 (11th Cir. 1992) ...........................................4, 21

*Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288 (11th Cir. 2004) .............................15

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ....................................................................10

*Omni Healthcare Inc. v. Health First, Inc.*, 2016 WL 4272164 (M.D. Fla. Aug. 13, 2016) .........17

*Palmyra Park Hosp. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291 (11th Cir. 2010) ...........9, 11

*Parkhurst v. Hiring 4 U, Inc.*, 2020 WL 5797709 (M.D. Fla. Sept. 29, 2020) ..............................5

*Rider Clothing LLC v. BoardRiders, Inc.*, 2019 WL 8163813 (C.D. Cal. Nov. 26, 2019) ..........24

*Robles v. Humana Hosp.*, 785 F. Supp. 989 (N.D. Ga. 1992) ......................................................11

*RxStrategies v. CVS Pharmacy, Inc.*, 2019 WL 7584729 (M.D. Fla. Dec. 4, 2019), Opp.
    23 ..............................................................................................................................................18

*SHM Int'l Corp. v. Guangdong Chant Gr., Inc.*, 2016 WL 4204553 (N.D. Ga. June 29,
    2016) ........................................................................................................................................25

*Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir. 1991) ......................................10, 11

*U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986 (11th Cir. 1993) ....................................................14

*United States v. Bestfoods*, 524 U.S. 51 (1998) ...................................................................6

*United States v. Columbia Steel Co.*, 334 U.S. 495 ..............................................4, 18, 19

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ..............19

*Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291 (11th Cir. 2018) ..................................6, 7

*Vujin v. Galbut*, 2020 WL 7090206 (11th Cir. Dec. 4, 2020) ....................................4, 7

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015) ..........................4, 5

*Wilding v. DNC Servs. Corp.*, 941 F.3d 1116 (11th Cir. 2019) .....................................8

## OTHER AUTHORITIES

15 U.S.C. § 15b .............................................................................................................15

Clayton Act § 3 ...........................................................................................................24

Rule 12(b)(6) ...............................................................................................................13

Sherman Act ..........................................................................................................4, 19

Sherman Act Section 1 ..................................................................................5, 19, 21, 22

Sherman Act Section 2 .....................................................................................6, 12, 16

Plaintiff asserts it has substantially reworked its Complaint and therefore complied with this Court's Order, Opp. 2; it has done neither.  Following the Court's grant of Defendants' motion to dismiss, Plaintiff made isolated changes, many of which involved nothing more than removing allegations that Defendants identified as harmful to Plaintiff's claims.  *See* Defs.' Br. 11 n.1, 25 n.7, 26 n.9, 33. The First Amended Complaint ("FAC") remains nothing more than a series of scattershot allegations replete with "conclusory, vague and immaterial facts," Order 4, unconnected to the claims it asserts, aimed at creating the impression that Google is a bad actor.  It is thus "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. District Bd. of Trustees of Cent. Fla. Community College*, 77 F.3d 364, 366 (11th Cir. 1996).

As to Defendants' substantive antitrust arguments, the Opposition merely repeats the FAC's unsupported and inadequate assertions of anticompetitive conduct.  And rather than explain how it could have been harmed by that alleged conduct, Plaintiff instead implies the Court should ignore Plaintiff's lack of standing in light of government actions with no connection to Plaintiff's alleged injuries.  Far from rebutting Defendants' showing that Plaintiff lacks standing, Plaintiff concedes it suffered injury in only two of the alleged relevant markets— Online Advertising and Online Video Advertising—and therefore lacks Article III

or antitrust standing in the other markets.  And Plaintiff offers no persuasive

argument that it has antitrust standing in the online advertising markets.

As a general matter, Plaintiff's reliance on unrelated government actions to

give "fair notice" of the claims in this action is nonsense:  A complaint filed by a

different plaintiff—one that need not allege or prove antitrust standing—does not

somehow relieve this Plaintiff of its obligation to allege specific conduct that

caused specific injury to it, connected to specific, viable causes of action.  Plaintiff

has done nothing to clarify its claims or explain why it is entitled to any recovery;

its disregard of the Court's clear instructions merits dismissal with prejudice.

## ARGUMENT

## I.   LEGAL STANDARD ON A MOTION TO DISMISS

Plaintiff again attempts to disguise its pleading failures by claiming that

"Google's dominance" in the relevant markets gives rise to "fact-intensive issues."

Opp. 4.  But the Supreme Court has directly rejected Plaintiff's apparent argument

that all antitrust cases must proceed to discovery, regardless of the vague and

conclusory nature of the pleadings.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-

59 (2007) (fact-based pleading standards are especially important given enormous

cost of antitrust discovery); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice").[1]  Plaintiff's failure to allege sufficient facts to state a plausible claim for relief compels dismissal of its Complaint.

## II.    THE FAC IS ANOTHER SHOTGUN PLEADING

Plaintiff contends that it has "address[ed] the Court's instructions" regarding the shotgun nature of the original Complaint "in good faith."  Opp. 4.  To the contrary, Plaintiff fails to comply with four of the Court's five instructions.

Instruction #1:  In their opening brief, Defendants identified—by way of example only—three swaths of allegations in the FAC that have nothing to do with the claims Plaintiffs assert.  Defs.' Br. 3.  The entirety of Plaintiff's response is contained in a single footnote, *see* Opp. 5 n.5, which does nothing to demonstrate that any of those wide-ranging allegations is relevant to anything:

- Plaintiff says the growth of Google search, FAC ¶¶ 35-40, is relevant to "one of the markets pled," but that "market" is itself irrelevant—Plaintiff does not compete in online search and disclaims any injury in the asserted online search and search advertising markets, Opp. 13.

- Plaintiff claims allegations concerning acquisitions, FAC ¶¶ 60-68, establish "monopolies," "market power," and "specific intent to monopolize."  But

---

[1] Plaintiff's suggestion that Defendants should cite only pre-discovery cases, Opp. 4, is simply wrong, and in any event, Defendants do cite to such cases as well. *See, e.g.*, Defs.' Br. 9, 10, 11, 13, 16-17, 19, 21, 22, 33, 37.

those allegations concern *vertical* acquisitions, which do not increase market concentration and do not evince specific intent—as Plaintiff's own authority demonstrates. *See United States v. Columbia Steel Co.*, 334 U.S. 495, 525 ("vertical integration, as such without more, cannot be held violative of the Sherman Act"), *cited at* Opp. 27.

● Plaintiff's claim that its allegations regarding government influence, FAC ¶¶ 167-170, demonstrate specific intent to monopolize, is wrong as a matter of law: Attempts to influence government cannot violate the antitrust laws. *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1558 (11th Cir. 1992).

Instruction #2:  Plaintiff suggests it has addressed the Court's instruction because the FAC no longer incorporates the allegations of predecessor counts into every count.  Opp. 5.  But a complaint may still be a shotgun pleading even when "each count does not adopt the allegations of all preceding counts" if it suffers from other fundamental problems characteristic of shotgun pleadings.  *Vujin v. Galbut*, 2020 WL 7090206, at *5 (11th Cir. Dec. 4, 2020); *see Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).  Here, Plaintiff still incorporates the same massive swaths of the FAC into Counts I-VI, much of which could not possibly be relevant to each count.  Plaintiff's reliance on *Weiland* is therefore unavailing because, unlike the Complaint in that case, each

4

count in the FAC contains irrelevant factual allegations.  *Id*. at 1324.  Accordingly, the FAC is a shotgun pleading because it fails to provide "adequate notice of . . . the grounds upon which each claim rests."  *Weiland*, 792 F.3d at 1323.

Instruction #3: Plaintiff contends it has complied with the Court's third instruction because it says all counts are based on a common set of facts and therefore certain paragraphs of the FAC may support more than one count.  Opp. 5-6.  But given the range of diverse and often irrelevant conduct Plaintiff cites as support for each count, it is not remotely plausible that all cited paragraphs could support the same claim.  Defs.' Br. 5-6.[2]

Instruction #4: Plaintiff admits it failed to comply with the Court's fourth instruction as to all counts except the tortious interference count.  Plaintiff argues, however, that it should be exempt from compliance because Alphabet, Google, and YouTube "operate as a single entity."  Opp. 6.  But the FAC alleges only that Google is a subsidiary of Alphabet, that YouTube is a subsidiary of Google, and

---

[2] Plaintiff's reliance on *Lemley v. Red Bull North America, Inc*., 2017 WL 2126595 (S.D. Ga. May 16, 2017), a product liability case, and *Parkhurst v. Hiring 4 U, Inc.*, 2020 WL 5797709 (M.D. Fla. Sept. 29, 2020), an employment discrimination case, is misplaced.  Those courts concluded it was proper to re-allege factual allegations because the counts were based on a common set of facts.  Here, the suggestion that, for example, conduct labelled as "unilateral" supports a concerted-action claim under section 1 of the Sherman Act, is plainly implausible.  *See* Defs.' Br. 5-6.

that Defendants "are operated and controlled as a single entity."  FAC ¶¶ 14, 16-17.  The FAC provides no support for any assertion that all Defendants participated in all of the alleged anticompetitive conduct, and Plaintiff comes nowhere near the required showing to pursue antitrust claims against Defendants as a single entity.[3]  There is no basis, for example, to hold Alphabet liable for the purported acts of its subsidiaries.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries.").

*　*　*

Given these and other deficiencies, the Court should dismiss the FAC with prejudice.  The Eleventh Circuit has rejected Plaintiff's contention that such a dismissal is appropriate only where there is evidence of bad faith.  Opp. 8; *see Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).  Instead, where "a plaintiff had fair notice of the defects in his shotgun pleading and a meaningful chance to fix them through an amended complaint but did not do so, the court is

---

[3] *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1237 (10th Cir. 2017) (corporation cannot be held liable under § 2 for "anticompetitive conduct of one or more related entities, merely by virtue of its place in the same corporate family"); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1324 (S.D. Fla. 2010) (rejecting argument that subsidiary and parent may both be held liable for conspiring to restrain trade "even where there is no evidence that both were involved in the challenged conduct").

justified in dismissing the case with prejudice on shotgun pleading grounds."

*McDowell v. Gonzalez*, 820 F. App'x 989, 990-91 (11th Cir. 2020); *see also Vibe*

*Micro*, 878 F.3d at 1296; *Vujin*, 2020 WL 7090206, at *8; *Clifford v. Federman*,

2020 WL 377026 at * 4 (N.D. Ga 2020) (Boulee, J.) (dismissing with prejudice

where plaintiff did not "meaningfully amend" after Court gave notice of defects).

## III.   PLAINTIFF LACKS STANDING TO BRING SUIT

### A.   Plaintiff Does Not Establish Article III or Antitrust Standing in the Markets in Which It Does Not Compete.

Plaintiff does nothing to suggest it has sufficiently alleged Article III or

antitrust standing in any market other than the online advertising markets; to the

contrary, it concedes it suffered no injury in any of those non-advertising markets.

Opp. 13.  Plaintiff asserts baldly that it is a Google customer in the Ad Server

"market" and "is forced to participate in the Google ecosystem through Google's

monopolies in Internet Search, Chrome Browser, and Android OS and its exclusive

agreement with Apple."  Opp. 12.  But merely asserting participation in a market is

not enough.[4]  "[G]eneral factual allegations of injury resulting from the

---

[4] None of Plaintiff's cases supports standing to pursue an antitrust claim where it is
a market participant but has not alleged injury in that market.  *See* Opp. 9-11;
*Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019) (plaintiffs purchased product at
allegedly supracompetitive prices); *Associated Gen. Contractors of Cal. v. Cal.
State Council of Carpenters*, 459 U.S. 519 (1983) (alleged injury *not* sufficient to
warrant enforcement of plaintiff's antitrust claim); *Blue Shield v. McCready*, 457

defendant's conduct may suffice" at the pleading stage, *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019), but Plaintiff does not even attempt to describe any injury, much less antitrust injury, that it suffered in any market other than the Online Advertising and Online Video Advertising markets.

Plaintiff contends that "evidence of Defendants'" alleged "anticompetitive acts and monopoly leveraging" in markets in which Plaintiff does not compete is somehow relevant to Plaintiff's alleged injuries in the online advertising markets. Opp. 13 n.15. But to establish standing as to markets in which it does not compete, Plaintiff would need to plead facts establishing that its alleged injury in the online advertising markets is "inextricably intertwined" with conduct in the other alleged markets, *In re Alum. Warehouse Antitrust Litig.*, 833 F.3d 151, 161-63 (2d Cir. 2016); *see Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1341 (11th Cir. 2017)—a showing Plaintiff does not even attempt. Plaintiff lacks either Article III or antitrust standing in the Internet Search, Licensable Mobile Device Operating System, Ad Server, Web Browser, or Search Advertising markets.

---

U.S. 465, 470, 475-80 (1982) (plaintiff "clearly had suffered an injury"; issue was remoteness of injury); *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017) (plaintiff lacked antitrust standing *even though* he suffered injury and was market participant); *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 96 (2d Cir. 2019) (conferring standing because "plaintiffs in these cases allege that the injury they suffered was in the very market that the defendants restrained").

**B.**     **Plaintiff Lacks Antitrust Standing in the Online Advertising and Online Video Advertising Markets.**

To have antitrust standing, Plaintiff must "allege[] an antitrust injury" and "be an efficient enforcer of the antitrust laws." *Palmyra Park Hosp. v. Phoebe Putney Mem'l Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010).  Plaintiff fails on both counts.[5]

First, Plaintiff's alleged injury is not an antitrust injury.  Plaintiff agrees it must allege loss caused by anticompetitive conduct, but asserts it suffered such a loss when Google "[e]ffectively put[]" Plaintiff "out of business."  Opp. 13.  But "[t]he antitrust laws were enacted for the protection of *competition*, not *competitors*."  *Atlantic Richfield Co. v. USA Petrol. Co.*, 495 U.S. 328, 338 (1990).  Plaintiff provides no factual support for the contention that Defendants weakened competition beyond its claim that Plaintiff was effectively put out of business.[6]

---

[5] Plaintiff contends it has alleged "that Defendants have eviscerated competition in the Online Advertising and Online Video Advertising Markets by and through the anticompetitive conduct alleged across markets."  Opp. 15.  But simply stating that, without factual support, is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Defendants do not seek to "rewrite the facts as alleged in the FAC."  Opp. 15.  Rather, they have pointed out that the FAC lacks facts sufficient to plausibly allege that Defendants engaged in anticompetitive conduct or that the alleged conduct could have weakened competition in the online advertising markets.

[6] Plaintiff merely makes vague references to other unnamed companies without any factual support, *e.g.*, FAC ¶ 120 ("dozens of [unnamed] previously profitable competitors, ad networks, publishers and advertisers were forced into bankruptcy or fire sales"), which provides no notice, for example, of the prevalence of the

That a single competitor suffers lost profits does not mean industry-wide competition has suffered.  *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998) ("allegation of harm to" a single competitor "does not automatically show injury to competition").  Contrary to Plaintiff's assertion, Opp. 15, its allegations demonstrate only that it is a disappointed competitor.[7]

The only plausible inference the Court can draw from the Complaint is that Inform failed to take any steps to transition from Flash during the *several years* that Google and the entire industry shifted to the preferred, open-standards HTML5 technology.  Defs.' Br. 11-13.  And Plaintiff has not alleged that Google prevented Plaintiff from creating advertisements compatible with Google's Chrome browser or required the use of Google products to create HTML5 video ads.  *Id.*  In short, Plaintiff fails to plead "that the injury" it "suffered derives from some anticompetitive conduct," and therefore fails to plead antitrust injury. *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1450 (11th Cir. 1991).

---

alleged injury and whether they led to the sort of market-wide harms the antitrust laws are meant to protect.

[7] Contrary to Plaintiff's assertions that it has "[a]dequately [p]led [h]arm to [c]ompetition," Opp. 29, the allegations Plaintiff points to in its brief are purely conclusory, and do not relate to any harm suffered by Plaintiff—as even Plaintiff's own cited cases require.  *See, e.g.*, *Gulf States Reorg. Grp. v. Nucor Corp.*, 466 F.3d 961, 967 (11th Cir. 2006) (finding antitrust injury because harm allegedly suffered *by plaintiff* was "inseparable from the alleged harm to competition").

Second, Plaintiff is not an efficient enforcer of its purported claim because its alleged injury is at best indirect.  That Plaintiff "operates across markets," Opp. 16, has nothing to do with whether it is an efficient enforcer of a specific claim in a specific market.  Plaintiff's own description of its alleged injury shows that its injury was, at best, derivative of the direct injury allegedly suffered by publishers.  *See* FAC ¶¶ 85-86, 118, 122; Defs.' Br. 13-14.

Plaintiff's alleged financial loss likewise is not dispositive because it was not a direct injury—it resulted from whatever harm Adobe and downstream digital publishers allegedly suffered.  Opp. 16-17.  The efficient enforcer analysis "is best understood . . . as a search for the proper plaintiff."  *Todorov*, 921 F.2d at 1448. Here, where there plainly exist better plaintiffs, Plaintiff is not an efficient enforcer.  *See IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 67 (2d Cir. 2019); *Robles v. Humana Hosp.*, 785 F. Supp. 989, 999 (N.D. Ga. 1992).[8]

Finally, Plaintiff's contention that it is an efficient enforcer because it seeks a structural remedy and because it is a single plaintiff, Opp. 17-18, cannot save its claims.  Plaintiff does not even attempt to show how the injunctive relief it seeks

---

[8] Plaintiff's contention that, under Palmyra Park, 604 F.3d 1291, its injury is not too remote, Opp. 17, n.24, misses the mark.  Unlike here, in Palmyra, the court concluded that the plaintiff was "better suited than . . . other parties" to bring suit because, in part, it was the defendant's "chief competitor."  *Id*. at 1305.

has any connection to the injury alleged.  *See Duty Free Am., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1273 (11th Cir. 2015).  And the fact that Plaintiff is a single plaintiff does nothing to negate the risk of duplicative recoveries.  Plaintiff merely asserts in a footnote that "there is no issue of apportionment of damages or duplicative recoveries," Opp. 17 n.24, but does not explain how it would allocate damages between itself and the more directly injured parties.

## IV.   PLAINTIFF FAILS TO PLEAD A SECTION 2 CLAIM

### A.   Plaintiff Does Not Plead a Monopoly Maintenance Claim in the Online Advertising or Online Video Advertising Markets.

In addition to lacking antitrust standing, Plaintiff fails to plead a Sherman Act Section 2 monopoly maintenance claim in either the Online Advertising or Online Video Advertising markets for three independent reasons.

*First*, Plaintiff does not adequately allege any relevant antitrust markets. Plaintiff does not respond to Defendants' arguments other than to describe the FAC's allegations and assert that they pass muster.  Opp. 20-21.  As Defendants explained, the FAC's various unexplained assertions regarding the alleged relevant markets are not enough.  Defs.' Br. 17-19.  Plaintiff fails to explain why Online Advertising is a distinct economic market that excludes the host of other avenues through which companies advertise their products (*e.g.*, television, newspapers, billboards).  To plead a relevant market, Plaintiff must explain why online

12

advertising products are not substitutable with those other products.  *See Glynn-Brunswick Hosp. Auth. v. Becton*, 159 F. Supp. 3d 1361, 1381 (S.D. Ga. 2016) (granting dismissal where plaintiffs alleged "proposed market that clearly [did] not encompass all interchangeable substitute products").[9]  Because the FAC does not come close to adequately alleging relevant antitrust markets, the Court can and should address the issue at the motion to dismiss stage.  *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327 (11th Cir. 2010).[10]

 *Second*, Plaintiff has not pled that any Defendant currently has monopoly power in either market.  Defs.' Br. 24-25.  Plaintiff claims instead that Google "behaves like a monopolist" and therefore must be one.  Opp. 21.  Plaintiff likewise contends that, where a defendant does not control a predominant share of the market, "direct evidence" that it "controlled prices or excluded competition" may be sufficient to show monopoly power.  *Id*.  But Plaintiff's allegations point to

---

[9] Plaintiff's claim that Defendants somehow waived the issues of market contours, cross-elasticity, and barriers to entry by not previously raising those issues, Opp. 21 n.29, borders on the frivolous.  Defendants' Motion to Dismiss was the first opportunity to respond to the FAC's allegations.  As Defendants argued there, Plaintiff's failure to define the relevant markets' contours, to include factual allegations on cross-elasticity of demand, or to allege barriers to entry are fatal.  Defs.' Br. 16-17 (*citing Jacobs*, 626 F.3d at 1336-38).

[10] Whether certain government entities have alleged or recognized certain markets, Opp. 20 n.27, is not dispositive.  The FAC must satisfy Rule 12(b)(6) on its own.

no such direct evidence.  And Plaintiff apparently concedes that Google lacks a large enough market share in either of the online advertising markets to presume monopoly power without other indicia.  *See* Opp. 22 (noting that Defendants allegedly have high market share *only in the five other alleged markets*); *see also U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986, 1000 (11th Cir. 1993) (noting that no case has found monopoly power with less than 50% market share).[11]

*Third*, Plaintiff has not pled anticompetitive conduct.  Plaintiff points to "Defendants' inorganic strategic acquisitions, anticompetitive contracts and anticompetitive activities."  Opp. 25.  But Plaintiff does not connect the FAC's laundry list of alleged anticompetitive acquisitions and other activity across several alleged markets to either Defendants' conduct in the online advertising markets— switching from Flash to HTML5—or Plaintiff's alleged injury.  Aside from the unspecified charge that Defendants "improperly argue the merits of the case," Opp. 26, Plaintiff fails to address Defendants' argument that the FAC itself plainly shows the transition from Flash to HTML5 could not constitute exclusionary conduct under the antitrust laws.

---

[11] Plaintiff's attempt to distinguish *U.S. Anchor Mfg.*, Opp. at 22, n. 31, fails because it confuses the element of monopoly power necessary to sustain a monopolization case and the dangerous probability of success element necessary to prove an attempted monopolization case.  Plaintiff cites no case where monopoly power was adequately pled where the defendant had a market share less than 50%.

The FAC does not allege that Google's decision to switch to HTML5 had no legitimate business purpose and therefore does not sufficiently allege that Google's conduct was anticompetitive. *See Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1295 (11th Cir. 2004). Nor does the FAC allege that Plaintiff (or any other competitor) was excluded from the market *because of* the industry-wide adoption of HTML5. HTML5 is an open-source technology, FAC ¶ 122; nothing could preclude Plaintiff or its customers from using this freely licensable format.

Finally, to the extent Plaintiff seeks to rely on Google's acquisitions to substantiate any of its claims, that argument must fail. Each acquisition on which Plaintiff relies was not challenged by federal regulators and occurred well outside the four-year statute of limitations applicable to federal antitrust claims. *See* 15 U.S.C. § 15b. Moreover, the FAC does not plead facts explaining how any transaction resulted in Google's unlawful acquisition of monopoly power in any market, or how such acquisitions harmed Plaintiff at all; the FAC merely pairs descriptions of the transactions with conclusory allegations. FAC ¶¶ 60-68.

### B.  Plaintiff Does Not Plead a Monopoly Maintenance Claim in Any Other Market.

As discussed above, *see supra* p. 7-12, Plaintiff lacks both Article III and antitrust standing to pursue claims relating to markets other than the alleged Online Advertising and Online Video Advertising markets. But the Court should dismiss

Plaintiff's monopoly maintenance claim as to those non-advertising markets for the additional reason that Plaintiff has not adequately alleged these are relevant antitrust markets or that Defendants engaged in anticompetitive conduct in them.

Plaintiff asserts that Google engaged in all of the conduct alleged in the FAC "in an attempt to gain monopoly power in the Online Advertising Market and Online Video Advertising Market."  Opp. 25.  But Plaintiff does not even attempt to connect the dots between conduct in other alleged markets and the switch to HTML5 or Plaintiff's alleged resulting injury—lost profits.  In any event, even if Plaintiff's claims of anticompetitive conduct in unrelated markets were relevant to Plaintiff's claims arising in the online advertising markets, that would not entitle Plaintiff to bring antitrust claims as to the non-online advertising markets.

Plaintiff's Opposition merely asserts that the FAC "lays out the type of anticompetitive conduct alleged" along with "the factual allegations of Defendants' conduct."  *Id*. 25-26.  Plaintiff does nothing to clarify how any of the alleged unlawful conduct is exclusionary, much less how it harmed competition.  As Defendants explained, vague descriptions of conduct, bereft of any allegations as to how the conduct excluded competitors or otherwise harmed competition, cannot state a Section 2 claim.  Defs.' Br. 28-32.

### C.     Plaintiff's Attempted Monopolization Claim Fails.

Plaintiff's attempted monopolization claim fails for the same reasons its

monopoly maintenance claims fail: Plaintiff does not allege facts (1) to support the

Online Advertising, Online Video Advertising, or Web Browser markets as

relevant antitrust markets; or (2) to show predatory or anticompetitive conduct in

those markets.  *See supra* p. 12-16.  But the attempted monopolization claim fails

for the additional reasons that Plaintiff does not plead facts to support a dangerous

probability of achieving monopoly power or specific intent to monopolize.

Plaintiff argues that a market share of less than 50% may be sufficient to

plead attempted monopolization "where direct evidence of a defendant's behavior

makes monopolization clear or whether other factors amplify defendant's market

power," Opp. 23 (citing *Omni Healthcare Inc. v. Health First, Inc.*, 2016 WL

4272164, at *16 (M.D. Fla. Aug. 13, 2016)).  The *Omni* court permitted an

attempted monopolization claim to proceed because the plaintiffs provided specific

evidence that a monopoly in the relevant market was dangerously probable for

reasons unrelated to the defendant's market share, acknowledging that the Eleventh

Circuit has "held that, as a matter of law, there was no dangerous probability of

success *because* the defendant possessed less than 50% of the market throughout

the time of the alleged conduct."  *Id.*  Here, in contrast, Plaintiff merely asserts,

without support, that "Defendants' market share in the Online Advertising Market is amplified by" generically described factors.  Opp. 24 n.32.  That is not enough to plead a dangerous probability of monopoly power absent sufficient market share.[12] *See Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1351 (S.D. Fla. 2002) (plaintiff could not establish dangerous probability of success where it did not allege majority market share or additional factors, such as facts related to plaintiff's market share relative to defendants' share or barriers to entry).

Nor has Plaintiff alleged specific intent to monopolize.  Plaintiff invites the court to infer such intent from conclusory assertions of purportedly predatory conduct.  Opp. 27.  But Plaintiff offers no support for those assertions: Plaintiff fails to substantiate its claims that Google harvests competitors' data, interferes with competitors, or consolidates revenue to hide market power.  Plaintiff likewise offers no factual support for the contention that Defendants' acquisitions evince Google's intent to monopolize.[13]  And Plaintiff never explains how the presence of

---

[12] Plaintiff also cites *RxStrategies v. CVS Pharmacy, Inc.*, 2019 WL 7584729 (M.D. Fla. Dec. 4, 2019), Opp. 23, which was not an attempted monopolization case, and therefore did not consider (let alone reject) the Eleventh Circuit's precedent that at least a 50% share is required.

[13] Plaintiff cites *United States v. Columbia Steel Co.*, 334 U.S. 495 (1948), as support for this assertion.  There, the Court noted only that it could look to a long history of acquisitions to determine a defendant's intent in making a particular challenged acquisition.  *Id.* at 532.  Here, no particular acquisition is being

former Google employees in government roles and Google's protection of its own

proprietary data are in any way relevant.  The antitrust laws do not prohibit former

employees from taking government positions, nor do they require Google to assist

its competitors by sharing data.  *See Trinko*, 540 U.S. at 411.

### D.    Plaintiff Cannot Allege a Monopoly Leveraging Claim.

The Supreme Court has made clear that monopoly "leveraging presupposes

anticompetitive conduct."  *Verizon Commc'ns Inc. v. Law Offices of Curtis V.*

*Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004).  Plaintiff recognizes that, but says it

alleges "numerous forms of anticompetitive conduct."  Opp. 28 n.36.  As explained

elsewhere, Plaintiff has not sufficiently alleged any anticompetitive conduct; its

leveraging claim fails.  *Supra* p. 14-17; *infra* p. 19-24.

## V.    PLAINTIFF FAILS TO PLEAD A SECTION 1 CLAIM

Plaintiff asserts that it has alleged a *per se* tying violation and an

unreasonable restraint on competition.  Opp. 30-34.  Neither claim has merit.

---

challenged (nor could it be, *see supra* at 15), and Plaintiff alleges that "Google has
steadily and systematically grown through acquisition of *corollary* ad tech, web
application and online video platform companies."  FAC ¶ 60; *see id.* ¶¶ 60-68.  In
other words, Google has not acquired competitors, it has acquired companies that
offered services that complement Google's—otherwise known as vertical
integration.  *See Columbia Steel*, at 525 ("vertical integration, as such without
more, cannot be held violative of the Sherman Act").

A.    **Plaintiff Has Not Pled a *Per Se* Tying Claim.**

In claiming that it has sufficiently alleged a *per se* tying claim, Plaintiff

merely restates the FAC's allegations.  Plaintiff asserts two purported ties: (1) the

rebranding of DoubleClick Ad Server with AdX as a single product; and (2) the

supposed tie of ads on YouTube to Google's ad buying tools.  Opp. 31-32.

As to the alleged "tie" of the DoubleClick Ad Server with AdX, integrating

a product into another product is not *per se* illegal.  Here, Plaintiff has not pled that

advertisers using competing ad exchanges cannot have their ads served on websites

that use DoubleClick (thereby forcing the use of AdX).  Plaintiff thus cannot allege

that the rebranding coerced any advertiser into using AdX.  Without coercion,

there can be no unlawful tie.  *See It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d

676, 684-85 (4th Cir. 2016); *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*,

145 F.3d 1258, 1263 (11th Cir. 1998).[14]

Regarding Plaintiff's YouTube allegations, Plaintiff still does not contend it

was forced to use Google's ad-buying tools to advertise on YouTube or that

YouTube has sufficient market power to force buyers to purchase the alleged tied

---

[14] Plaintiff alleges that it "must use the Google Ad Server to function as the
delivery method for both display and online video advertisements or creatives,"
FAC ¶ 98, but a tying violation requires forced use of the tied/non-dominant
product (AdX), not the tying/dominant product (the DoubleClick ad server).  *See
Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502-03 (11th Cir. 1985).

product.  Plaintiff asserts that the FAC includes allegations regarding YouTube's

market share but cites only paragraphs referencing Google's acquisition of

YouTube, YouTube's daily visitors, and YouTube's revenue.  *See* Opp. 32; FAC

¶¶ 51-53.  Those allegations do not show that YouTube possesses market power in

any relevant antitrust market sufficient to coerce buyers to purchase a tied product.

### B.  Plaintiff Has Not Adequately Alleged an Unreasonable Restraint of Trade in a Properly Defined Antitrust Market.

As already explained, Plaintiff fails to allege any relevant antitrust market

and fails to allege any anticompetitive harm within a relevant market; on those

grounds alone, the Court should dismiss Plaintiff's other section 1 claims.  *See*

*supra* p. 12-16; Defs.' Br. 15-19; *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d

1538, 1551 (11th Cir. 1996).  As to Plaintiff's other arguments (*see* Opp. 33-34):

- Plaintiff has not plausibly pled that Defendants engaged in any conspiracy

   with former employees.  The FAC does not allege any agreement between

   Google and former employees to take any action to benefit Google.  The

   FAC merely alleges that certain former Google employees in government

   positions participated in decisions that allegedly benefited Google.[15]

---

[15] The *Noerr-Pennington* doctrine bars any claim that Google exerted influence "on
the U.S. government to maintain and increase its" purported monopolies, FAC ¶
167:  "Joint efforts to influence public officials do not violate the antitrust laws
even though intended to eliminate competition."  *McGuire Oil*, 958 F.2d at 1558.

- Plaintiff never explains how alleged agreements with companies such as Facebook could have caused it injury of any kind, much less antitrust injury.

- Nor does Plaintiff in any way connect Google's purported acquisition of patents to any anticompetitive effect or any injury to Plaintiff (or even identify any agreement relating to such patents that could qualify as concerted action for purposes of Section 1).

Plaintiff's scattershot arguments merely illustrate the problem with shotgun pleadings like the FAC:  Having made no effort to connect a broad range of alleged conduct to any particular effect or injury it suffered, Plaintiff's claim that "Google's improper action has been adequately pled," Opp. 34, rings hollow.

## VI.   PLAINTIFF DOES NOT PLEAD EXCLUSIVE DEALING CLAIMS

Plaintiff's exclusive dealing claims, Opp. 34-39, fail at the most fundamental level: Plaintiff does not adequately allege any exclusive agreement.  Defs.' Br. 36-37.  Alleging agreements requiring preferred placement and similar terms, FAC ¶ 132, or "various restrictions in the AdWords API terms and conditions," *id.* ¶ 133, is far too vague to state a claim, *see Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1058-59 & n.13-14 (D. Colo. 2017) (granting dismissal due to "absence of factual allegations related to the nature of Crocs' alleged exclusive arrangements or allegations related to how those agreements significantly impair competition").

Alleging that programs are pre-installed or the default on certain devices, FAC ¶¶ 148, 156, likewise does not suffice where customers with Android or Apple devices can simply download and use other applications.[16]  And alleging that "Google insists on exclusivity" regarding AdSense, without identifying a single agreement establishing that exclusivity, does nothing to satisfy Plaintiff's burden.

Nor does Plaintiff properly define any antitrust market in which any alleged agreement could have substantially foreclosed competition or explain how competition was foreclosed in any such market.  Defs.' Br. 38.  Plaintiff offers only the unsupported and circular conclusion that "Google's size, interrelated monopolies and distinct lack of competition" mean that Plaintiff "has properly pled that Google's exclusive dealings have substantially foreclosed competition in these markets."  Opp. 39.  Although Plaintiff asserts it has directly alleged "substantial foreclosure of the relevant markets due to Google's exclusive dealings," Opp. 38, the FAC does no such thing:  Nowhere does Plaintiff allege facts from which one could identify the degree of alleged foreclosure, let alone that it was substantial. That failure is fatal.  *See Eastman v. Quest Diag. Inc.*, 724 F. App'x 556, 558-59

---

[16] Plaintiffs' assertion that Google is able to act as a "gatekeeper" via the Google Play Store, Opp. 37-38, is unsupported by any allegation in the FAC that any competing application has been excluded from the Play Store.

(9th Cir. 2018) (affirming dismissal where plaintiff failed to allege *facts* regarding alleged foreclosure); *Rider Clothing LLC v. BoardRiders, Inc.*, 2019 WL 8163813, at *4 (C.D. Cal. Nov. 26, 2019) (granting dismissal where complaint alleged "nothing related to the number or character of Defendants' [exclusive] promotional contracts or the share of the market they" foreclosed).

Finally, the FAC fails to allege that Plaintiff was harmed by any alleged exclusive deal. Plaintiff has not pled any allegations suggesting, or a single instance in which, it could not compete with Google because Google had an agreement with a customer requiring the customer to deal exclusively with it.

To make up for these obvious deficiencies, Plaintiff again attempts to rely on a government antitrust action. Opp. 36. But Plaintiff cannot cure its myriad pleading failures or its lack of standing by riding on the government's coattails.[17]

## VII. PLAINTIFF HAS NOT PLED TORTIOUS INTERFERENCE

Plaintiff fails to address how Google engaged in any "improper action or wrongful conduct," without privilege, that directly caused Inform to lose a customer. *See* Defs.' Br. 39-40. Georgia law requires specific allegations of

---

[17] Plaintiff asserts, without citation, that it can state a Clayton Act § 3 claim. Opp. 37 n.45. But it is beyond cavil that § 3 "does not apply to agreements involving services." *Bela Vista Contractors, Inc. v. Tierra del Mar Condo. Ass'n, Inc.*, 2015 WL 10857529, at *3 n.3 (S.D. Fla. Oct. 2, 2015) (collecting cases).

"predatory tactics," which are "wrongful in [themselves]," to support a tortious interference claim. *Id*. Yet Plaintiff alleges no facts showing that contacting Inform's (unidentified) customer was "wrongful in itself"—there is no description of a separately actionable misrepresentation, no specific allegation of fraud, no claim that Google unlawfully used confidential information, etc., that caused Inform to "eventually lose" the customer Google supposedly contacted. Instead, the FAC reasons that approaching a competitor's customer to convince it that the competitor's product is inferior is wrongful. But that is lawful competition. *See, e.g.*, *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga Ct. App. 2007). Plaintiff's refusal to provide any details supporting its claim clarifies that the Court can and should dismiss this claim now. *See AWP, Inc. v. Henry*, 2020 WL 6876299, * 8-9 (N.D. Ga. Oct., 28 2020) (tortious interference claims dismissed where complaint did not allege sufficient facts to support claims); *accord SHM Int'l Corp. v. Guangdong Chant Gr., Inc.*, 2016 WL 4204553, at *6 (N.D. Ga. June 29, 2016).

## CONCLUSION

The Court should dismiss Plaintiff's FAC in its entirety because it is a shotgun pleading and because Plaintiff lacks standing. In the alternative, Counts I-VI should be dismissed for failure to state a claim under federal antitrust law and Count VII should be dismissed for failure to state a claim for tortious interference.

Respectfully submitted this 15th day of January 2021.

*/s/ Eric P. Schroeder*

BRYAN CAVE LEIGHTON
PAISNER LLP
Eric P. Schroeder (Ga. Bar 629880)
Brian M. Underwood, Jr. (Ga. Bar
804091)
One Atlantic Center, 14th Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone:   404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

WILLIAMS & CONNOLLY LLP
John E. Schmidtlein*
Carol J. Pruski*
Kimberly Broecker*
*Pro hac vice
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
cpruski@wc.com
kbroecker@wc.com

*Counsel for Defendants Google LLC,
Alphabet Inc., and YouTube, LLC*

## **Local Rule 7.1(D) Certification of Compliance**

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font and point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 15th day of January, 2021.

/s/ Eric P. Schroeder
Eric P. Schroeder
Ga. Bar 629880

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 15th day of January, 2021.

/s/ Eric P. Schroeder
Eric P. Schroeder
Ga. Bar 629880